BILL MITCHELL v. THE STATE.

No. 1273. Decided February 14, 1912.

Rehearing Denied March 13, 1912.

**1.—Murder—Evidence—Other Offenses—Motive.**

Upon trial of murder, there was no error in introducing in evidence a certified copy of an indictment in another cause in which defendant, his father, brother, and others were indicted for the murder of certain relatives of the deceased, and also a certified judgment of conviction of defendant's father in said other case, to show motive, it being shown by circumstantial evidence that defendant had knowledge of these matters.

**2.—Same—Evidence—Motive—Other Transactions.**

Upon trial of murder, there was no error in admitting in evidence that the deceased was the only eyewitness to another homicide for which defendant, his father, and others had been indicted, and his father convicted to be hanged, and that efforts had been made after said conviction to release defendant's father by mob violence or to convey poison to him; and that during said effort to release defendant's father, his brother was killed by the jail guards; this was admissible to show motive.

**3.—Same—Evidence—Nonresident—Reproduction of Testimony.**

Where, upon trial of murder, it was shown that one of the State's witnesses, the wife of deceased, was a nonresident of the State; that her testimony had been reduced to writing by the official stenographer at a former trial, and that defendant had cross-examined her, and all the elements of a proper predicate had been laid, there was no error in admitting her testimony at a former trial in evidence. Following Robertson v. State, 63 Texas Crim. Rep., 216.

**4.—Same—Evidence—Identification—Officer's Efforts to Arrest.**

Upon trial of murder, there was no error in permitting the sheriff to

Vol. LXV Crim.—35.

testify that he made inquiries, shortly after the killing of the deceased, with reference to the defendant and his whereabouts, and getting a description from the wife of the deceased of the man whom she said killed her husband; and to testify as to certain horse tracks leading from the place of the homicide and making inquiries as to that; the identity of the defendant being an issue.

### 5.—Same—Bill of Exceptions.

Where the court expressly refused the bill of exceptions because the testimony with reference to the sheriff's effort to arrest the defendant was not correct, but allowed the same with the quailfication by referring to the statement of facts for a correct statement of such testimony, there was no error.

### 6.—Same—Evidence—Contradicting Witness.

Where, upon trial of murder, the defendant had introduced witnesses showing contradictory statements by the wife of the deceased in her description of the slayer of her husband, there was no error in admitting the testimony of the sheriff as to the description given him of the said slayer by the wife of deceased, some ten days after the killing.

### 7.—Same—Argument of Counsel—Allusion to Defendant's Failure to Testify.

Where the bill of exceptions did not state any of the proceedings in the case so as to show whether State's counsel had alluded to defendant's failure to testify, the same could not be considered on appeal. Following Combs v. State, 55 Texas Crim. Rep., 332, and other cases.

### 8.—Same—Charge of Court—Motive—Limiting Testimony—Other Offenses.

Where, upon trial of murder, the State had been permitted to introduce testimony as to other offenses and transactions for the purpose of showing motive on the part of the defendant, and such testimony could not have been used by the jury for any other purpose, there was no error in the court's failure to limit such testimony. Harrelson v. State, 60 Texas Crim. Rep., 534.

### 9.—Same—Charge of Court—Imputing Crime to Another.

Where, upon trial of murder, there was not sufficient evidence to have justified the court to submit a charge on the question of imputing the crime to another, there was no error in the court's failure to do so, under Article 723, Code Criminal Procedure.

### 10.—Same—Evidence—Contradicting Witness.

Upon trial of murder where the defendant introduced testimony to contradict the wife of the deceased in her description of the slayer of her husband, there was no error to permit the State to show that the State's witness got a description of the slayer of deceased from the wife of deceased some twenty or thirty minutes after the homicide, which corresponded with her testimony, and that he thereupon tracked the horse of the slayer, etc.

### 11.—Same—Charge of Court—Murder in the Second Degree.

Where, upon trial of murder, the evidence did not raise the issue of murder in the second degree, there was no error in the court's failure to charge thereon.

### 12.—Same—Charge of Court—Circumstantial Evidence.

Where, upon trial of murder, there was positive evidence identifying the defendant as the slayer of the deceased and also circumstantial evidence, there was no error in the court's failure to charge on circumstantial evidence.

### 13.—Same—Trial Judge—Examination of Witnesses—Bill of Exceptions.

Where, upon appeal from a conviction of murder, there was no bill of exceptions to show that the defendant objected at the time the alleged questions to the witnesses were asked by the court, the same could not be considered; however, it is the safest rule that the trial judge do not interrogate the witnesses, but simply rule on the evidence.

**14.—Same—Sufficiency of the Evidence—Identification.**

Where, upon trial of murder, the evidence identified the defendant as the slayer of the deceased and supported a conviction of murder in the first degree, there was no error.

**15.—Same—Evidence—Other Offenses—Motive.**

Where, upon trial of murder, the evidence showed that defendant was arrested and tried for another offense for killing some of the relatives of the deceased and also wounding the deceased for which he had been acquitted, there was no error in admitting in evidence said former indictment and judgment of conviction of defendant's father, etc., to show motive, and there was no error in the court's failure to limit said testimony, under Article 723, Code Criminal Procedure. Distinguishing Betts v. State, recently decided.

**16.—Same—Charge of Court—Article 723—Imputing Crime to Another.**

Where, upon trial of murder, the evidence did not sufficiently raise the question of imputing the crime to another, and the court charged the reasonable doubt, alibi, etc., and required the jury to find that the defendant did the killing with express malice, there was no error under Article 723, Code Criminal Procedure, in failing to charge on the question of imputing the crime to another, besides a special charge was not required under said Article if this issue had been sufficiently raised by the evidence. Distinguishing Wheeler v. State, 56 Texas Crim. Rep., 547.

**17.—Same—Evidence—Contradicting Witness—Contemporaneous Statement.**

Where defendant, upon trial of murder, in many ways undertook to break down the testimony of the wife of the deceased as to her description of the slayer of her husband, there was no error in permitting a witness to testify that about ten days or two weeks after the killing, the wife of the deceased told the witness that she would know the man who killed her husband by the look he gave her out of his eyes, etc.; and it was not necessary that this was a contemporaneous statement.

**18.—Same—Practice on Appeal.**

Where the conclusion of the Appellate Court from the evidence was not misunderstood or incorrectly stated by said court in the original opinion, there was no error.

Appeal from the District Court of Cherokee. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

*Carter & Walker, L. D. Guinn,* and *F. H. Chandler,* for appellant.— On question of the court's failure to limit testimony as to other offenses and other transactions: Davidson v. State, 22 Texas Crim. App., 372; Taylor v. State, id., 529; Washington v. State, 23 Texas Crim. App., 336; Maines v. State, id., 568; Hennesy v. State, id., 340; Littleford v. State, 24 Texas Crim. App., 167; Burks v. State, id., 326; Willis v. State, id., 584; Higginbothen v. State, id., 505; Reno v. State, 25 Texas Crim. App., 102; Kitchen v. State, 26 id., 165; Barnes v. State, 28 Texas Crim. App., 29; Chance v. State, id., 375; Moore v. State, id., 377; Barton v. State, id., 483; Purcelly v. State, 29 Texas Crim. App., 1; Williamson v. State, 30 Texas Crim. App., 330; Welhousen v. State, id., 623; Watson v. State, 32 Texas Crim. Rep., 80; Strong v. State, id., 219; Dawson v. State, id., 535; Mahoney

v. State, 33 Texas Crim. App., 388; Sexton v. State, id., 416; Warren
v. State, id., 502; Oliver v. State, id., 541; Mask v. State, 34 Texas
Crim. Rep., 136; Thornley v. State, 36 id., 118; Mallory v. State, 37
id., 482; Harrelson v. State, 60 id., 534.

On question of court's failure to submit charge on imputing crime
to another: Kirby v. State, 49 Texas Crim. Rep., 517; Harrison v.
State, 47 id., 393; Hart v. State, 15 Texas Crim. App., 202; McInturf
v. State, 20 id., 335; Lenord v. Washington Terr., 7 Pac., 872; Kunde
v. State, 22 Texas Crim. App., 65; Coffelt v. State, 19 Texas Crim.
App., 436; Murphy v. State, 36 Texas Crim. Rep., 24; Dubose v. State,
10 Texas Crim. App., 230.

*C. E. Lane,* Assistant Attorney-General, and *W. B. O'Quinn,* District
Attorney, for the State.—On question of court's failure to limit testi-
mony of other offenses: Harrelson v. State, 60 Texas Crim. Rep.,
534, 132 S. W. Rep., 783.

PRENDERGAST, Judge.—In August, 1907, the grand jury of
Shelby County, duly indicted appellant for the murder of Jas. M.
Truitt, alleged to have occurred on or about July 20, 1886. It seems
he was first tried in September, 1907, and then in March, 1908, in the
District Court of said county, both trials resulting in a hung jury.
Thereafter the venue of the case was properly changed from Shelby to
Cherokee County where a trial again occurred in December, 1910, when
he was convicted of murder in the first degree and given a life term in
the penitentiary.

The statement of facts is very lengthy. None of the questions raised
make it necessary to give anything like a detailed statement of facts.
They can be understood without it. However, the record shows that
in 1874, the appellant, who was then a young man some twenty to
twenty-two years of age, lived with his father and other relatives in
Erath County, Texas, near the Hood County line, and that during that
year his father, himself, his brother-in-law, another brother and others
were duly jointly indicted by the grand jury of Hood County for the
murder of Isaac Truitt and Samuel Truitt, and the wounding of Jas.
Truitt, charged to have been committed in March, 1874; that in the
latter part of that year his father was tried, convicted of murder in the
first degree and the death penalty found against him and that in
obedience thereto, later he was hanged; that after his father's conviction
and before he was hanged, the guards around the jail where he was
confined, killed another brother of appellant with whom there was
someone else at the time at night; that the killing of his brother on
this occasion by the guards was because his brother, and whoever else
was with him at the time, were supposed to be either attempting to
rescue his father from jail or convey to him a poison so that he could
commit suicide and avoid being executed; that immediately after the
killing of the Truitts the appellant and others fled and continued fugi-

tives until 1907, when appellant was arrested, brought back to Hood County, tried for the murder of said Truitts in 1874, on said old joint indictment and acquitted. It was also shown that Jas. M. Truitt, who was killed in 1886, in Shelby County, was the same James Truitt who was wounded at the time Isaac and Samuel Truitt were killed in 1874; that he attended the trial of appellant's father when his father was convicted, testified in that case and was the only living witness to the killing of said Isaac and Samuel Truitt and the wounding of himself on that occasion.

One of the most material questions on the trial of appellant, at which he was convicted and from which this appeal was had, was whether he was the person who killed Jas. M. Truitt, in Shelby County in 1886.

Appellant objected to the introduction in evidence of the certified copies of the said indictment, judgment of conviction and sentence of his father for the murder of Isaac and Samuel Truitt in 1874. To the indictment on the grounds: 1. That the indictment was hearsay as to him; that it was not shown at the time they were offered in evidence that he knew anything about the existence of it. 2. That the indictment offered is a substituted copy and there is no evidence that he knew that it was such an indictment or that any notice to substitute same was ever served upon him. 3. That it was wholly immaterial to any issue before the jury in this cause and calculated to and will prejudice his rights before the jury and create in their minds great prejudice if such substituted indictment be permitted to go before the jury as evidence. To the judgment of conviction and sentence his objections were substantially the same as the first and third to the indictment.

It is always permissible in a case of this kind for the State to prove any pertinent fact showing motive or intent; knowledge or notice to him of the indictments can be shown by circumstantial evidence as well as by direct proof. The evidence in this case, without doubt, if not by direct proof, circumstantially, showed that the appellant had knowledge of all these matters at and about the time they were occurring. The court did not err in admitting these instruments objected to, on any of the grounds stated by appellant.

Appellant objected to the testimony of Landers offered by the State to the effect that he was present when appellant's father and others were tried in Hood County for the killing of the Truitts in 1874; that the jury convicted his father of murder in the first degree and assessed the death penalty; that he was present and saw appellant's father hanged under that conviction; that Jas. M. Truitt, for the murder of whom appellant was convicted in this case, testified as a witness for the State against his father on the said trial of his father and that said Jas. M. Truitt was the only eyewitness to the killing of the said Truitts in Hood County; that he was one of the guards at the jail during the time appellant's father was confined therein awaiting execution and that one of appellant's brothers was killed by the jailer or some of the

guards while attempting to approach the jail while his father was confined therein under the death sentence; that the brother that was killed was crawling up to the jail and had a bottle of laudanum on him at the time he was killed. The appellant objected to this testimony because it was hearsay and was getting in evidence before the jury an ex parte proceeding to which he was not a party and it was not shown that he was present at said trial or confined in jail or knew that his father was hanged, or that his brother was killed while approaching the jail with poison for his father, and because said testimony was wholly immaterial and calculated to and did prejudice the rights of the defendant before the jury in this cause and created in their minds great prejudice against him.

Appellant made the same objections to substantially the same testimony of Peters, another witness for the State, as was made to the testimony of Landers.

He made substantially the same objections to the testimony of another State's witness Goodlett, who testified that he was one of the jurors who tried and convicted his said father and that the jury assessed the death penalty and that his father was hanged thereunder.

In our opinion the testimony of each of these witnesses was admissible for the purpose of proving motive and a cause for the killing of Jas. M. Truitt in 1886 by appellant and that it was pertinent and proper testimony as to him.

It was clearly shown that Mrs. Julia Truitt (Bishop), who was the wife of the deceased, Jas. M. Truitt, at the time he was killed in 1886, testified before the court and jury on trial of the appellant under the indictment in this case in March, 1908; that the appellant was, of course, present at that trial, heard her testimony, had the opportunity to and cross-examined her fully at the time. The State proved by the court stenographer that he took down in full her testimony on that trial. After properly identifying her testimony on that former trial by the stenographer, the State offered it in evidence on this trial. Thereupon, the appellant, desiring to make objections thereto, asked, and the State consented, and thereupon the court retired the jury from the preliminary hearing of the evidence to account for the absence and nonresidence of said witness. After the jury was retired, before the court, the testimony was introduced and clearly showed that this witness was then and had for many years prior thereto been a nonresident of the State of Texas, having removed from said State and the place where her husband was killed many years prior to this trial; that at the instance of the State, after the appellant was indicted in this case, she attended the court at which he was tried, or to be tried several times. That the State tried to get her to attend this trial as well as other terms of court when the case was supposed to be tried, but that at some of the times and especially at this time she informed the district attorney by letters dated and marked at Birmingham, Alabama, just ten days before this trial that she could not attend this trial

under any circumstances; that she was then quarantined, nursing her only daughter who had scarlet fever. The testimony on this point which was addressed to and passed upon by the court, which was proper, clearly showed that she was a nonresident of the State, as stated above, was out of the State, as stated above, and just ten days before the trial wrote to the prosecuting officer, as stated above, and clearly, we think, showed that she was not only a nonresident of the State and resided out of it, but that she was then out of the State at Birmingham, Alabama, and was not in Texas, at all, during the trial.

The appellant objected to the introduction of her testimony, first, because no proper predicate was laid for its introduction; second, it is not shown that such testimony was taken before the District Court upon a former trial as provided by law; third, because the defendant had the constitutional right to be confronted by the witnesses against him upon this trial.

As stated above, there was ample evidence to justify the court in holding as he did that the proper predicates were laid for the introduction of this testimony and that the facts clearly met the first and second objections above stated. As to the third, this court has held adversely to the appellant in an exhaustive opinion by Judge Harper for this court in the case of Robertson v. State, 63 Texas Crim. Rep., 216, 142 S. W., 533.

Appellant has several bills of exceptions to the testimony of the State's witness Spradley, who was sheriff of Nacogdoches County at the time the deceased was killed in this case. The testimony of this witness objected to was to the effect that two days after the killing he got from Mrs. Truitt (Bishop) a description of the man she said shot and killed her husband. She was present at the time of the killing, saw it and saw the man who did it. Also as to his testimony of his trailing the horse the slayer rode from the place of the killing just after the killing and the fact that while trailing him he made inquiries of various persons along the route where he was trailing this horse. He identified the tracks of the horse from time to time for a distance of a good many miles from Timpson, in Shelby County where the killing occurred, in a westerly direction until after the horse crossed the Trinity River many miles from the place of the killing. The court in no instance permitted the witness to state what the parties of whom he made inquiries told him. These bills are quite lengthy but it is unnecessary to give them in full. It is clearly shown that from about noon the day the deceased was killed until an hour or two after the killing of that night that the party who did the killing was seen and clearly identified, riding a horse of a certain description, going from west towards the east, where deceased lived and that he stopped parties, or a party and inquired the way to Timpson, the little town where the deceased lived and where he was killed. That about noon that day at a village he stopped and had the front feet of his horse shod. He left there going in the direction of Timpson, was met and identified

by several persons going in that direction after he had his horse shod; that he reached Timpson shortly before, or just about sundown; that the killing occurred just after dark that night in the deceased's residence; that this same party hitched his horse in a thicket some seventy-five yards from the house so that he could be at least partially concealed, went to the house where the deceased was sitting with his wife and child back in the room from the door where the slayer entered. That he stepped up into the door, partially crouched and went on tip-toe or walked from the door several steps to where the deceased was, drew and fired a large pistol striking the deceased in the head, the ball passing entirely through the head, from which the deceased almost instantly expired; that Mrs. Truitt, the wife of the deceased, saw all of this and partially observed it, not knowing at the time that the slayer intended to kill her husband and not realizing it until he got right at the deceased, drew his pistol and fired; that the shot or commotion, in some way, put out the light. The slayer deliberately retraced his steps, went back to and got on his horse and was seen to pass through the little town in a lope going back west in the direction whence he came and whence those persons had seen him that evening. At least two witnesses testified positively to seeing the same man on the same horse return from Timpson going west the night after the killing and a sufficient time for him to have reached where they saw him after the killing. Sheriff Spradley and other witnesses are shown to have tracked this horse from the place where he was hitched, when the killing was done, back west for a considerable distance—many miles—as shown above. It was also clearly shown that the appellant at that time had a brother, Dan Mitchell, who lived in Erath County and it appears had lived there continuously from the time of the killing of the Truitts in 1874, at least until the killing of the deceased in this case. That the appellant was a fugitive from justice from 1874 until arrested in 1907, on the old charge against him in Hood County, and that during that time he was in Southwestern Texas and repeatedly seen therein. That he, from time to time during this time, went under different names. Appellant also laid the predicate and introduced the testimony of some witnesses to contradict Mrs. Truitt (Bishop) in her testimony, among other things, of the description she had given of the slayer shortly after the killing.

While there was positive testimony by witnesses identifying the appellant as the person who fired the shot that killed the deceased in this case, there is a great deal of circumstantial evidence which was clearly admissible for the purpose of and tending to show that appellant was the slayer. In our opinion the testimony objected to by the appellant of the witness Spradley, as shown by the record and as qualified by the judge in allowing the bills, was admissible and the court did not err in admitting it.

There is in the record what is claimed to be appellant's bill of exceptions No. 8b, undertaking to object to the testimony of said Sprad-

ley to the effect that he arrested, soon after the killing, Dan Mitchell, a brother of appellant, and took him to Nacogdoches, placing him in jail there and that after getting certain information, he then went to Kinney County, where appellant lived, looking for him. The court expressly refused to allow the bill, as this evidence was claimed to be presented therein, but allowed it as the evidence was presented by the statement of facts, referring to the page. As the matter is presented and qualified by the court, there was no error shown by this bill.

By another bill appellant objected to the testimony of said Spradley of the description given to him by Mrs. Truitt (Bishop) of the slayer some ten days after the killing. As stated above, the appellant had introduced witnesses showing contradictory statements made by Mrs. Truitt (Bishop) in her description of the slayer. When such is the case it is always competent for the party whose witness is thus attacked to sustain the witness by showing that he had made statements similar to those testified to by him, to other parties about the time. For a collation of some of the authorities on this point see 2 Buckler's Criminal Digest, p. 1741, section 573, and White's Code Criminal Procedure, section 119, subdivision 4, page 729.

By another bill of exceptions appellant complains of this language, which, he says, was used by the district attorney, Hon. W. B. O'Quinn, in his opening speech for the State: "She (meaning the wife of the deceased) knows better than any other person in the world, except the defendant, that he, the defendant, was the man who killed her husband." This was objected to because it was claimed it was a direct reference to the failure of the defendant to testify in his own behalf on the trial. The court, in allowing this bill, qualified it, stating that if his attention was called to the remarks which he did not recollect, it was done privately and the jury heard nothing of it. The bill does not state any of the proceedings in the case so as to show whether or not this remark was justified and it does not show that the defendant did not testify on the trial. We think it would be a strained construction of this single remark, as quoted, to be any reference to the appellant's failure to testify, if he did, and as the matter is presented it does not show any reversible error. The appellant requested no charge to the jury that they should not consider it. Combs v. State, 55 Texas Crim. Rep., 332; Knight v. State, recently decided, but not yet reported; Vann v. State, 48 Texas Crim. Rep., 11; Wright v. State, 37 Texas Crim. Rep., 146; Arnold v. State, 38 Texas Crim. Rep., 5.

Two other complaints by appellant are to the failure of the court to charge the jury the object of the introduction of the old indictment of appellant and his father in Hood County, and the judgment of conviction and sentence of appellant's father, and that if admissible at all, they were only admissible to show motive on the part of appellant and claiming the jury were left without any direction to consider them for that purpose only. The appellant introduced a certified copy

of acquittal of him under the said old indictment against him and his father in Hood County. This testimony could not have been used by the jury for any other purpose. It was unnecessary for the court to charge limiting that testimony. No special charge was requested by appellant on the subject. Harrelson v. State, 60 Texas Crim. Rep., 534, and cases there cited.

Neither did the court err in not charging limiting the testimony of Landers, Peters and Goodlett, hereinabove stated, for the same reasons.

Another complaint is that the court erred in failing to charge the jury that if they believed from the evidence that Mit Graves killed the deceased, and that the court erred in failing to charge the jury that if they believed any other person than the defendant killed the deceased, or they had a reasonable doubt of it, they would acquit him. The appellant, as the court, in allowing this bill states, requested no charge on any of these matters and made no exceptions during the trial. The court in the charge given required the jury to believe beyond a reasonable doubt that the appellant killed the deceased, and charged also, reasonable doubt and told them that if they had a reasonable doubt of the guilt of the defendant to acquit him. The court also gave a correct charge on alibi to which there is no complaint. In our opinion, there is not sufficient evidence in the record to have justified the court to have submitted to the jury whether or not Mit Graves killed the deceased. In view of the charge given by the court, shown above, the court did not commit reversible error in not charging, as complained by appellant, on this ground. See Code Criminal Procedure, article 723.

By another bill appellant objected to certain testimony by the State's witness John T. Garrison. The bill, as qualified by the court, shows substantially this state of facts: This witness testified that he was in the little town of Timpson at the time of the killing of the deceased and heard it very soon after it occurred; that he at once went to the house of the deceased; that in going from where he was when he heard it to the deceased's house he saw what was evidently the slayer riding in a lope across the town not in the streets, but away from and from the direction of where the killing had occurred. That in going to the house he met parties who gave a description of the slayer and that upon going to the house he saw the deceased's wife, talked with her, and his testimony shows, with reasonable certainty, that he then and there got from her a description of the slayer. This occurred very shortly after the killing and from his testimony, it occurred within twenty or thirty minutes from the time of the killing. As stated above, the defendant introduced witnesses who testified that they heard the wife of the deceased describe the slayer, whether at this identical time and to this identical witness Garrison or not, is not made clear, but it all occurred about the same time very soon after the killing. Their testimony was introduced to contradict Mrs. Truitt in the description

of the appellant which she gave at the time of the killing, they testifying she gave a description different from what she testified on the stand when she testified in the trial of this case. This witness Garrison is also shown by his own and other testimony to have, very soon after the killing, and on the same night, tracked the horse the slayer rode away from the killing for several miles during that night, and also an additional distance the next day. Under these circumstances the court permitted this witness, at the instance of the State, to testify to the description of this man as he got it that night and that that was the description of the man he was tracking away from the scene of the killing. The court admitted the testimony on the basis that the whole of the witness' testimony showed that he got that description from the wife of the deceased that night very soon after the killing occurred and that the man that he described as the one whom he was tracking away from there, in effect, suited that description. The court at first, when the objections were made, declined to let the witness Garrison so testify, but when the State reintroduced him and there was elicited from the witness further and additional testimony on the subject, the court then permitted him to testify as stated. The appellant objected thereto on the ground that it was hearsay, inadmissible and prejudicial to the appellant's rights in that it was getting before the jury the ideas and conclusions of other persons than the witness as to the man who killed the deceased. As the matter appears in the record, no reversible error was shown by permitting this testimony.

Another objection is that the court did not charge on murder in the second degree. If appellant was the slayer, the evidence presented nothing but murder in the first degree. No special charge presenting murder in the second degree was requested, and none should have been given.

Neither did the court err in not charging on circumstantial evidence. No charge was asked by the appellant on that subject. There was positive evidence by Mrs. Truitt, the wife of the deceased, positively identifying the defendant as the slayer. There was further evidence and strong corroborating circumstances by other witnesses tending to show that he was the slayer. It is only necessary to give a charge on circumstantial evidence when there is no testimony other than circumstantial evidence to show the guilt of the appellant.

The only other bill of exceptions by appellant states that the State in this case was represented by Hon. W. B. O'Quinn, the district attorney; that he was an able, vigorous and fearless prosecutor and conducted this prosecution with great skill and ability, "but notwithstanding this fact the judge who tried this cause questioned the witnesses as is shown by the statement of facts filed herein, as follows: On page 7 he asked one question; on page 8 two questions; on page 10 two questions; on page 15 one question; on page 41 one question; on page 42 four questions; on page 43 three; on page 44 one; on page 47 one; on page 51 two; on page 53 one; on page 55 two; on page

57 two; on page 58 two; on page 59 one; on page 61 two; on page 68 two; on page 69 one; on page 70 two; on page 71 two; on page 72 one; on page 73 one; on page 75 one; on page 80 one; on page 81 three; on page 124 three; making a total of forty-four times the court asked the witness in this cause questions." The bill then proceeds to state that in paragraph 21 of the motion for a new trial, appellant assigned the action of the court in making these frequent and repeated interrogations of the witness as error and states, "and he here excepts to said frequent and repeated interrogation of the witnesses during the taking of the testimony in said trial, because the court thereby manifested an undue interest therein in behalf of the State to the prejudice of this defendant. That the effect of the court's repeated interrogation of the witnesses was to impress the jury with the idea that the court thought the defendant was guilty and ought to be convicted." And claims that the action of the court was to the prejudice of the appellant and deprived him of a fair and impartial trial. The court, in allowing the bill, did so with this statement or qualification: "I approve and allow this bill, and in doing so I respectfully and earnestly request the court to give its subject matter careful scrutiny and to give clear expression of its views as to the merits of defendant's criticisms of my action in this regard; upon examination I think it will be found that my questions had for their object a definite and clear understanding of the witness or to make his statement intelligible and no other, and that they nowhere suggest any bias or leaning in the case. I am familiar with the rule and with the just strictness with which the courts of last resort insist upon its observance that the trial judge shall not make himself a partisan, but on the other hand, now and during all the many years I have occupied the district bench I have regarded it as equally my duty to give intelligent direction to all stages of a trial, and to ask witnesses such questions, as in this case, I deemed necessary to an economy of time and to make clear and certain the meaning of the witness."

It is a sufficient and complete answer to this bill to state that neither in this bill, nor anywhere else in the record is it shown that the appellant objected at the time the questions were asked by the court to any or either, or all of them and took no bill of exceptions thereto at the time. Doubtless, if this had been done at the time, the court would have desisted from asking any question, and if necessary would have taken steps at the time to correct any wrong impression on the jury if any wrong impression was made. Such matters can be presented to us for revision only when excepted to at the time, and bills of exceptions taken thereto. They can not be presented for a revision by a mere motion for a new trial and a bill of exceptions showing that they were only called attention to by a motion for a new trial, as is shown in this instance. However, the learned judge who tried this case in the qualification to the bill,

we think, shows that no special injury as claimed by appellant, occurred to him that would justify or authorize this court in any event to reverse this case.

A proper interpretation of our statutes makes it clear, we think, as well as many decisions of this court on the subject that the court should refrain from asking questions of the witnesses. This should be left to the attorneys representing the respective sides. We know how hard it is for the court to refrain from doing this in many instances, but he is, and should be, and we have no doubt in this case the learned judge was, wholly disinterested, and not the representative of either side. We believe it is always safest, unless an extraordinary occasion should arise, or it became necessary, for the presiding judge to make an intelligent ruling, when the evidence is being detailed before the jury, for the judge to ask no questions. This is the safer rule and should be observed by the trial judges.

.The only other question raised is as to the sufficiency of the evidence to show that the appellant was the person who killed the deceased. The record shows that this is probably the fourth, at least the third, trial of this case, the prior trials resulting in hung juries. The testimony from the State's side, taken as a whole, is sufficient to sustain the verdict. There is nothing in the record to show any bias or prejudice either for or against the appellant by the jury as a whole, or any one of the jurors. The learned trial judge has heard the whole testimony on all the trials. The appellant was positively identified by Mrs. Truitt (Bishop) as the slayer. There is testimony in the record strongly corroborating her. It is true she was contradicted in some particulars by several witnesses. But all that was for the jury. The motive of the appellant for the killing is unquestionably shown. The court charged the jury on alibi, and in addition to the general charge on the presumption of innocence of the appellant, he charged unless the jury believe his guilt is established by the evidence, beyond a reasonable doubt, they would acquit him, and in addition that if the evidence raised in their mind a reasonable doubt as to the presence of the appellant at the place where deceased was killed at the time of the killing, that they should acquit him. The law, as we believe, has wisely left such matters to a jury of twelve disinterested, unprejudiced, competent men who hear all the testimony, all of the argument of the attorneys and the charge of the court, and has made them the exclusive judges of the credibility of the witnesses and the weight to be given to their testimony and has not delegated any such power or authority to this court. We have carefully read and studied all of the testimony in this case and under our duty, as we see it, we can not do otherwise than affirm this judgment.

*Affirmed.*

ON REHEARING.

March 13, 1912.

PRENDERGAST, Judge.—By his motion for rehearing appellant contends that this court erred in holding that the lower court did not err in failing to limit, by his charge, the purpose for which the jury could consider the indictment of appellant, his father and others for the murder of Isaac and Samuel Truitt and the assault to kill the deceased in this case, found by the grand jury of Hood County in 1874, alleging the killing and assault to kill to have occurred in said county at said time; and the judgment of conviction and sentence of appellant's father in that county, and the testimony of the witnesses Landers, Peters and Goodlett of the conviction of appellant's father in that case, the sentence and the fact that he was hanged under said indictment, conviction and sentence, claiming that this was of such extraneous matters that it made it the imperative duty of the court to limit the effect of this testimony in this case. The original opinion states, and it was an unquestioned fact, shown on the trial of this case that the appellant himself was arrested and tried in 1907 in Hood County on said indictment found against him in 1874, for the murder of Isaac and Samuel Truitt, and that he was acquitted by the jury in that case. The record shows that no testimony whatever was introduced in this case of the facts charged in the indictment in the Hood County case in 1874.

On this point appellant cites us to the cases first collated by Judge White in his Annotated Code of Criminal Procedure, sec. 815, p. 534, to support his contention. Judge White deduces from these cases, and states this rule: "Whenever extraneous matter is admitted in evidence for a specific purpose, incidental to, but which is not admissible directly, to prove the main issue, and which might tend, if not explained, to exercise a wrong, undue or improper influence upon the jury as to the main issue, injurious and prejudicial to the rights of a party, then it becomes the imperative duty of the court, in its charge to the jury, to so limit and restrict it that such unwarranted results can not ensue; and a failure to do so will be radical and reversible error, even though the charge be not excepted to." All these decisions were rendered before the amendment of article 723 (old), Code Criminal Procedure, as it now is, and since then has existed. So that the latter clause of the rule stated by Judge White above may not apply as he himself otherwise in his Annotated Code of Criminal Procedure states.

It has always been held by this court that the proof of motive and intent on the part of an accused person is not an extraneous matter, but on the contrary, that it is to prove the main issue in the case and in such event, as stated by Presiding Judge White in Hudson v. State, 28 Texas Crim. App., 341: "Such evidence being legitimate and admissible to prove a main issue in the case, to wit, defendant's

motive and malice in the perpetration of the murder, it was not obligatory upon the court in his charge to limit and restrict the purposes for which the evidence was admitted.  The rule as to restriction or limitation does not obtain with regard to evidence proving directly the main issue involved in the trial.  Davidson v. The State, 22 Texas Crim. App., 372." This rule is also expressly stated and recognized by Judge White in said section 815 above noted.  A great many other cases from this court might be cited to the same effect but it is unnecessary.  It is our opinion that it was impossible for the jury to be improperly influenced by this testimony complained of by appellant, so as in any way to be reversible error for the court not to have given a charge instructing the jury as to the consideration of its purpose as claimed by appellant.

It is unnecessary for us to discuss the case of Betts v. State, recently decided, but not yet reported, to show that it is wholly inapplicable to this case.

Appellant's next contention is that this court erred in holding that the lower court did not err in not submitting in his main charge that if Mit Graves, or any other person other than the appellant killed the deceased, to find the appellant not guilty.  By his motion for rehearing he requests this court to state in its opinion all of the evidence on this subject which might tend to show that his complaint is correct.

The statement of facts in this case is quite lengthy.  It takes 130 full typewritten pages to record and show to this court the evidence introduced on the trial.  It is true that perhaps a large proportion of it would be unnecessary to give on this subject, still it would require a considerably large portion of it to attempt under what appellant contends is pertinent on this question.  We can see no sufficient reason that it would elucidate in this case, or that it would be of any benefit in any other, hence, we can not, in this opinion, undertake to give all of this testimony.  We have read and studied this evidence, the whole of it, with a great deal of care and gone over the portions of it on this point time and again, and from the whole record, it is our opinion that appellant's contention presents no reversible error in this case.

The rule on this subject is well established and adhered to in this State.  Bishop v. State, 43 Texas, 390; Davis v. State, 28 Texas Crim. App., 542; Maxwell v. State, 31 Texas Crim. Rep., 119; Cannon v. State, 41 Texas Crim. Rep., 467; Alexander v. State, 63 Texas Crim. Rep., 102, 138 S. W., 721, and many other decisions.  In a well considered opinion by Judge Hurt in Davis v. State, supra, he said:

"Of what degree of force must the evidence be that tends to establish an offense, or tends to mitigate the offense charged in order to require a charge applicable thereto?  Chief Justice Roberts says that if its force is deemed to be very weak, trivial, or light, and its appli-

cation remote, 'the court is not required to give a charge upon it.' 'If, on the other hand, it is so pertinent and favorable as that it might be reasonably supposed that the jury could be influenced by it in arriving at their verdict, the court should charge so as to furnish them with the appropriate rule of law upon the subject.' Bishop v. The State, 43 Texas, 390. Hence, unless the evidence tending to present a less degree of an offense, or any theory of defense, be so pertinent and forcible that it might be reasonably supposed that the jury could be influenced by it in arriving at their verdict, a failure of the court to charge thereon would not be ground for reversal in the absence of exceptions.

"This position is in exact harmony with the first opinion in this case, and in accord with Bishop's case, supra, and a number of cases decided by this court, notably Cunningham's case, 17 Texas Court of Appeals, 89 Elam's case, 16 Texas Court of Appeals, 34; and Leeper's case, decided at the present term, but not yet reported. See also Johnson's case, 27 Texas, 758.

"Loose expressions upon this subject can be found in the opinions of this court, but the principle is well settled and is absolutely correct, whether this court has always adhered to it or not, that in the absence of exceptions to the charge of the court, for this court to reverse, the evidence tending to present a phase of the case or theory favorable to the accused must be so pertinent and favorable that it might reasonably—*not possibly*—be supposed that the jury could be influenced by it in arriving at their verdict. Unless the evidence be of such a character no injury appears, no injury is probably—not possible, but *probable*—and unless this appears, there is no ground for reversal; and to reverse in the absence of probable injury would be contrary to principle."

This rule was well established in this State while article 715 (old), Code Criminal Procedure, and article 723 (old), before it was amended in 1897, were in full force. Those articles, before 723 was amended in 1897, required this court to reverse .whenever either, as they were then construed, an error of commission or omission was made in the charge of the lower court. Since then this court has followed, as it was bound to do, the amended article 723, which requires, "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of the defendant."

It was not intended by this court, in the original opinion, in stating that no objection was made to the charge of the court on this ground on the trial of the case and no special charge covering the point was asked, to thereby state, or even imply that any error either of commission or omission in the charge of the court could not be raised by a motion for new trial as prescribed in said article 723, even though a special charge had not been requested on the trial nor any specific objection made at that time to the charge of the court.

It was merely called attention to for the purpose of showing the state of the record and the attitude of the case when the case was tried and the charge of the court below given to the jury. Ever since the adoption of the amended article 723, this court has not looked with so much favor on the omission in the charge of the court when no exception was made thereto at the time of the trial and no special charge asked covering the point, as if that course had been pursued on the trial; but in no instance has this court failed to take full cognizance of the matter even though it is first presented in the motion for a new trial.

A careful and thorough consideration of the testimony on the trial of this case convinces us, beyond doubt, that if Mit Graves had been on trial in this case and he had been indicted instead of appellant and the same testimony then introduced as was introduced in this case, that it would have been the duty of the lower court and the lower court unquestionably would have charged peremptorily to find Mit Graves not guilty.

In submitting the case to the jury for its finding, the court charged: "Now, if you believe from the evidence beyond a reasonable doubt that the defendant, Bill Mitchell, did, in Shelby County, State of Texas, on or about the 20th day of July, 1886, unlawfully and with express malice shoot with a pistol and thereby kill Jas. M. Truitt, you will find him guilty of murder in the first degree and assess his punishment at death, or confinement in the penitentiary for life, in your discretion." And then charged on alibi, stating what the defense of alibi is in this language, "if the deceased was killed as alleged, the defendant was, at the time of such killing, at another and different place from that at which such killing was done and therefore was not and could not have been the person who killed the deceased, if he was killed; now, if the evidence raises in your minds a reasonable doubt as to the presence of defendant at the place where deceased was killed (if killed) at the time of such killing, you will find him not guilty."

Appellant cites us to several cases to this effect: That a party accused of crime can meet this by showing that another or others committed it. This undoubtedly is the law. He also cites us to the case of Wheeler v. State, 56 Texas Crim. Rep., 547, 121 S. W., 166, in which it is held that because the court did not submit a charge in that case that if another, naming him, killed the deceased, they would find the defendant not guilty, and reversed the case because that was not done. A reference, however, to that case shows, as stated in the opinion, "that under the facts of the case this charge should have been given. Appellant may be guilty, or Powledge may be guilty, or others may be guilty; and it may be stated perhaps that under the circumstances the jury might be warranted in coming to a conclusion as well against one as the other." Numerous cases are

then cited in that opinion sustaining the holding, and appellant cites us to others to the same effect. An examination of them will show that in each one of them there was sufficient evidence, just as in the Wheeler case, supra, "that the appellant may be guilty or another may be guilty, or others may be guilty . . . and under the circumstances the jury might be warranted in coming to a conclusion as well against one as the other." No such facts appear in this case. Hence, there was no reversible error in the court not charging as now complained of by appellant.

Appellant also complains that the court committed reversible error in permitting the witness B. Y. Gibson to testify that Mrs. Truitt (Bishop), about ten days or two weeks after the killing, stated to him that she would know the man who killed her husband by the look he gave her out of his eyes. The record shows that the appellant in many ways undertook to break down the testimony of Mrs. Truitt (Bishop). Some of these were by contradicting her as to the description she gave the night of the killing of the person who killed her husband, the deceased, and by disputing her in other ways. The State then undertook, as it had the right, to support her testimony by showing that about, or soon after, the time of the killing she made similar statements to her testimony on the trial, and among them was the one complained of above. The appellant's objections to the testimony of Gibson were that such statement made ten days or two weeks subsequent to the killing was at too remote a time and especially as to the statements the contradicting witnesses, Booth and Pike, testify she made to them the night of the killing, contending that such sustaining testimony to be admissible, must be a part of the same conversation testified to by these impeaching witnesses, or in a contemporaneous one, or in a prior one nearer the transaction. Mrs. Truitt (Bishop) positively denied making the statements to the two impeaching witnesses that they testified she made to them. Unquestionably it is the law of this State and a general rule everywhere that under such circumstances, either side can support the testimony of their witness by showing that such witness had made the same or similar statements to other parties as those testified to by him. The question of when such statements to others were made need not be made at the same time or contemporaneous with the ones claimed to be made by the impeaching witness. It is true that the statement by a witness made to another might be so remote as to show that it was inadmissible, but we are of the opinion that if, as in this case, made in ten days or two weeks, when there is nothing in the bill shown to impeach the good faith of the statement at the time, or in other words, to show that the witness had been tampered with, or offered some inducement, or some occasion arose for the manufacture of such testimony. The bill shows no such thing in this case, and we are of the opinion that the admission of the testimony complained of as shown by this bill is not reversible error. The objections are

more to the weight of the testimony than to its admissibility. We refer again to the authorities cited in the original opinion, 2 Buckler's Criminal Digest, p. 1741, sec. 573, and White's C. C. P., sec. 1119, subd. 4, p. 729.

The only other complaint by the motion for rehearing is to this sentence in the original opinion of the court: "It is clearly shown that from about noon the day the deceased was killed until an hour or two after the killing of that night that the party who did the killing was seen and clearly identified, riding on a horse of a certain description going from west toward the east where deceased lived and that he stopped parties or a party and inquired the way to Timpson, the little town where the deceased lived and where he was killed." This sentence in the original opinion is singled out from a paragraph giving substantially a brief statement of what the evidence in the case established. Appellant, by his attorneys, claims that he can not understand "how this court could so grossly and so injuriously to him misunderstand the testimony of these witnesses." The criticism of this particular sentence in the main opinion is without the slightest foundation to stand upon. We again reiterate it and state further that there is not only no reasonable doubt, but that there is not a shadow of a doubt but that the party who did the killing of the deceased in this case was the person who was seen and clearly identified, riding the horse described by the witnesses in the case going from west towards the east where the deceased lived and that he stopped parties, or a party, and inquired the way to Timpson, where the deceased lived, and where he was killed that night. No one can read the record of this testimony and come to any other conclusion, or have any shadow of doubt but that that party was the party who killed the deceased. Whether that party was the appellant, Bill Mitchell, is a different question and was so treated and so discussed in the original opinion. That the witnesses who saw this party on this horse differed as to whether that person was Bill Mitchell or not, there is no question and the sentence in the original opinion, quoted above and complained of by appellant in this case can not be tortured into a statement that Bill Mitchell, the appellant in this case, "was that person seen and clearly identified." The conclusion from the evidence was not misunderstood by this court and not incorrectly stated by this court in the original opinion.

The motion for rehearing will be overruled.

*Overruled.*