### JACK CUILLA v. THE STATE.

No. 4073. Decided May 31, 1916.

Rehearing refused June 21, 1916.

**1.—Receiving or Concealing Stolen Property—Statutes Construed—Indictment—Proof—Disjunctive and Conjunctive—Words and Phrases.**

Where the defendant was indicted for receiving and concealing stolen property, the accused, under Article 1349, Penal Code, could be convicted for either receiving or concealing said stolen property, and the intent to defraud need not be to defraud any particular person, and the word "concealed" is not to be given the literal construction of "hiding." Following Polk v. State, 60 Texas Crim. Rep., 150; Nourse v. State, 2 Texas Crim. App., 304, and other cases.

**2.—Same—Sufficiency of the Evidence.**

Where, upon trial of receiving and concealing stolen property, the evidence was sufficient to sustain a conviction under both clauses of the statute, there was no reversible error.

**3.—Same—Case Stated—Lawyer—Attorney and Client.**

Where, upon trial of receiving and concealing stolen property, the evidence showed that an attorney at law who was the defendant, represented the person or persons who were alleged to have stolen the property, and that said attorney at law fraudulently received and concealed a portion of the alleged stolen property, the conviction was sustained.

**4.—Same—Evidence—Question by Court—Weight of Evidence.**

Where, upon trial of receiving and concealing stolen property, the trial judge, in order to understand the witness, asked him to reiterate the question and have the witness explain his meaning, without any intimitation to the jury such as would call for reversal and without a showing that probable injury to the accused was done thereby, there was no reversible error. Following Harrell v. State, 39 Texas Crim. Rep., 204, and other cases.

**5.—Same—Representation by Counsel.**

Where an attorney at law was present and represented defendant, there was no error in overruling his motion for a continuance because of the claimed absence and inability of his attorney to be present to represent him on this trial.

**6.—Same—Bill of Exceptions.**

Where the bill of exceptions in no way disclosed how the excluded testimony could have been material, or what the answer of the witness would have been, there was no reversible error.

Appeal from the County Court at Law of Harris. Tried below before the Hon. Murray B. Jones.

Appeal from a conviction of receiving and concealing stolen property of the value of $15; penalty, a fine of one hundred dollars and six months confinement in the county jail.

The opinion states the case.

*Cooper & Merrill,* for appellant.—On question of court interrogating witness: More v. State, 26 S. W. Rep., 403; Kirk v. State, 32 S. W. Rep., 1045; Lawson v. State, 32 S. W. Rep. 895; Wilson v. State, 17 Texas Crim. App., 525.

On question of insufficiency of evidence: Arcia v. State, 26 Texas Crim. App., 193; Wilson v. State, 12 id., 488; Dalton v. State, 103 S. W. Rep., 935.

*C. C. McDonald,* Assistant Attorney General, *John C. Crooker, Frank Williford, Jr., L. M. Williamson,* and *E. T. Branch,* for the State.— On question of statutes construed: Branch *Criminal Law,* section 907, and cases cited in opinion.

On question of judge interrogating witness: Elsworth v. State, 52 Texas Crim. Rep., 1, and cases cited in opinion.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of receiving and concealing stolen property worth $15, and his punishment assessed at a fine of $100 and six months in jail.

The statute is: If any person shall receive or conceal property which has been stolen, knowing it to have been so acquired, he shall

be punished the same as if he had stolen the property. (P. C., art. 1349.).

It is not necessary for a person to be guilty under this statute that he shall both receive *and* conceal, but the offense is, if he shall do either—receive it or conceal it, knowing at the time that it was stolen. This statute is clear as to this, and has always been held by this court as stated, and it has always been held that it is not necessary to charge nor prove the accused with having received or concealed the property with intent to defraud any particular person. "If the receiver of stolen property received it for the purpose of aiding the thief, or for concealing it, without expecting to receive any reward thereby, he is equally guilty as if he had bought it from the thief, with a knowledge that it was stolen with the intent to defraud the owner." (Nourse v. State, 2 Texas Crim. App:, 304.) In the same case it is held: "When the receiver knows that the goods have been stolen by the thief, then, if after the offense of theft is complete, he receives or conceals the stolen property, to aid the thief in escaping detection, or to assist him in disposing of it, the offense is complete." See also 2 Bishop's New Crim. Law, sec. 1138; Arcia v. State, 26 Texas Crim. App., 193; State v. Rushing, 12 Am. Rep., 641; Com. v. Bean, 117 Mass., 141. The indictment herein alleged that appellant received *and* concealed. Under such allegation the accused can be convicted for either receiving or concealing. (Branch's Crim. Law, sec. 907.) "The word conceal is not to be given the literal construction of hiding, but the handling of property in a manner that would throw the owners off their guard in their search and investigation for the same." (Polk v. State, 60 Texas Crim. Rep., 150; Davis v. State, 61 Texas Crim. Rep., 611.) "Property can be concealed by carrying it off." (Moseley v. State, 36 Texas Crim. Rep., 578, and the Polk and Davis cases, supra.)

Appellant contends that the evidence is insufficient to sustain the conviction. We have carefully read and studied the testimony. In our opinion it is amply sufficient to sustain a conviction for both receiving and concealing the stolen property. The great preponderance of the testimony clearly establishes both, a fraudulent receiving and a concealing of the stolen property. Most of the facts were established by both positive and circumstantial testimony without contradiction. It is true, there was some conflict in the testimony on some points, but even where there was conflict, the jury were clearly authorized to believe the incriminating testimony which they evidently did.

We will not recite the testimony in detail, but we will give the substance of what it established and what the jury were clearly authorized to believe and find therefrom.

Will Curtis burglarized the store of A. Tomasino and at the time stole therefrom a lot of dry goods in piece bolts and a Smith & Wesson 38 caliber pistol. He at once took his property to the house of his "kept woman," Elnora Pero. She undertook to conceal the property, and did conceal it about her premises, hiding said pistol and another

Colt pistol also, at a different place from the other stolen property. About December 5th, the officers, in hunting for this and other stolen property, searched several houses therefor in her immediate neighborhood. She became alarmed, fearing she might get in trouble about it. On the morning of December 5th, which was Sunday, the officers arrested Curtis and placed him in jail. She telephoned to appellant and his partner, asking them to come to her house. His partner first went and had an interview with the woman. A little later appellant himself went to her house and interviewed her. She told both of them that said goods and said Smith & Wesson pistol had been stolen by Curtis, and that she had concluded to burn them, fearing that if the officers found her in possession she would get in trouble. She employed appellant and his partner to represent Curtis. They had her then to put all of those stolen goods, including the pistols, in two packages, and that they would take them. Later that evening they both went to her house, got all of said stolen goods and pistols and took them to their office.

About the same time of the burglary of Tomasino's house, Curtis burglarized another store and stole some dry goods therefrom belonging to the Schaeffers. Elnora Pero told them about this burglary and theft also. They procured from her the address of Curtis' wife and went to see her, told her they were employed to represent Curtis and that they had been informed that there were concealed about her premises some of the Schaeffer stolen goods. They induced her (Curtis' wife) to turn over to them those stolen goods also, and they carried them to their office. In their office they placed said pistols in the drawer of appellant's desk, where they were concealed from observation. They placed both of the other sets of stolen dry goods in a closed trunk. The next morning the officers learned from Curtis' wife that appellant had gotten from her some stolen dry goods. The officers first took the Schaeffers there to see if they could identify any of those goods as theirs, not then having any knowledge that appellant had procured said stolen goods from the Pero woman. Appellant at first declined to permit them to examine the goods, demanding that they should describe them so as to identify them before seeing them, but finally after being insisted upon by the officer, permitted them to examine the goods. Upon this examination the Schaeffers identified some of the goods as those stolen from their store. Later the officers had Tomasino up to see if he could identify any of those goods as his. Because those which had been stolen from Tomasino were piece goods and all marks had been taken off of them, Tomasino could not with certainty identify any of those goods as his stolen goods, and none of them at that time were identified as his goods. These parties examined these goods more than once for the purpose of identifying them, if they could, but in the condition they were, Tomasino could identify none of them as his at that time. The appellant at no time when the officers or these parties were attempting to identify these goods, called their attention to the

fact that at the same time they had gotten the goods from the Pero negro woman they also got from her as a part of the same stolen goods said pistols. They said nothing about it whatever to any of these parties.

On December 13th an examining trial of Curtis was held on the burglary charge against him. Appellant and his partner represented him, were present at the examining trial and heard the testimony of all the witnesses. They heard the testimony of Tomasino, wherein he told about the burglary of his house and the stealing from him of said dry goods and said Smith & Wesson pistol. He accurately described the Smith & Wesson pistol so as to clearly identify it. Appellant at that time failed to disclose to Tomasino, the justice of the peace who held the examining trial, or any of the officers the fact that he had received that pistol from the Pero negro at the same time he received the other goods from her. On that examining trial, Tomasino testified that he had examined the dry goods in the trunk in their office but could not identify any of them as his property. On that same day, after the examining trial, appellant told Tomasino that he had a Colt pistol, but did not then or at any other time tell him that he had that Smith & Wesson pistol. Tomasino swore that he knew the Colt pistol could not be his, because no Colt pistol had been stolen from him. That he had been at appellant's office several times, both before the examining trial of Curtis and several times afterwards, and appellant "never told me that he had in his possession any Smith & Wesson pistol, the kind I had lost. Cuilla had heard me testify as a witness at the examining trial and heard me describe the gun which I now identify in court as the one that was stolen from me at the time Will Curtis burglarized my house. It's a Smith & Wesson pistol." On this trial this pistol having later been procured from Cuilla, was thoroughly identified by Tomasino as the pistol stolen from him by Curtis, and appellant and his partner both conceded that that was one .of the pistols they got from the Pero woman when they got it and the other stolen goods of Tomasino's. A few days after said examining trial appellant met one of the officers who had been active in trying to have the goods identified and in the prosecution of Curtis, laughed and asked him if he had found that pistol of Tomasino's yet. The officer replied that he had not. He continued to smile and walked away. The Pero woman did not testify in the examining trial. After this incident, about December 23, the officer learned from the Pero woman that at the time she turned over the other Tomasino stolen goods to appellant and his partner, she also turned over to him a pistol. The officer, after learning this, repeatedly went to appellant's office to see and get this pistol but failed to find him in his office. Later he sent another officer to get that pistol, and upon that officer's demand of appellant of the pistol he delivered it to that officer. The appellant and his partner both admitted in their testimony that the Smith & Wesson pistol that they then turned over to this officer, which was not

until December 23, or afterwards, was the same identical pistol that Tomasino had accurately described in his testimony on the examining trial as having been stolen from him at the time his other goods were stolen.

Appellant's partner, Mr. S. J. Schnitzel, testified that he and appellant attended the Corporation Court on December 6 in an upper story of the building in which were situated the headquarters of the city detectives and in coming down therefrom they were bound to pass, and did pass, by the detectives' offices and saw them therein. He swore: "The stolen goods had been in our office from twelve to fourteen hours then. Cuilla and I both knew there had been a burglary committed, and the stuff had been turned over to us by the Pero woman with the information that the alleged burglar, Will Curtis, had brought them to her house, and we had information that this alleged burglar had been arrested, and we were representing him. Mr. Cuilla and I said nothing to the detectives about us having the alleged stolen property in our possession. We, as lawyers, realized the fact that we were employed in representing Will Curtis, and probably the woman, if anything turned up against her, and it would not have been good policy for us as lawyers, in coming from down in the Corporation Court, to tell the detectives anything we knew about these goods, or where the goods could be found."

Appellant, in his cross-examination, swore that when the Pero woman turned over said dry goods to him and his partner, she told him that Curtis had turned over those goods and said Smith & Wesson pistol to her as stolen property; that he was present at the examining trial of Curtis and had heard Tomasino therein testify that his house had been burglarized and a 38 caliber Smith & Wesson pistol had then been stolen from him. He swore: "I kept the gun in my office from the 5th day of December to the 23d day of December, and did not say anything about it, simply because nobody called for it nor identified it. I did not mention the fact that I had the pistol and I concealed it for the simple reason that nobody called for it." That he did not tell Tomasino at any time that he had that pistol in his office nor that he had gotten that pistol from the Pero woman. "I would not have given it up till doomsday if the detectives had not come and asked for it. I represented Will Curtis in the District Court, and advised him to plead guilty, which he did." He further testified that Curtis plead guilty to burglarizing Tomasino's store, upon his advice, and that he also plead guilty to stealing said pistol from Tomasino.

Appellant on this trial further testified: "I heard Mr. Tomasino testify that he had lost a pistol and like the one now shown me. I heard him testify to this at the examining trial of Will Curtis, which was held in the Justice Court on the 13th day of December. Yes, I remember him being interrogated about some goods that were stolen out of his store at the same time the pistol was stolen, but they were not able to identify the goods. I heard him testify that in that bur-

glary he had lost a 38 caliber Smith & Wesson, and this examining trial was the examining trial of Will Curtis charged with this particular .burglary of Tomasino's house. Elnora Pero had told me at the time she gave me the pistol that Will Curtis had left it at her house. I kept the gun in my office from the 5th day of December to the .23d day of December, and did not say anything about it simply because nobody called for it or identified it. I did not mention the fact that I had the pistol and I concealed it for the simple reason that nobody called for it."

The partner of appellant testified: "Cuilla and I both knew there had been a burglary committed, and the stuff had been turned over to us by the Pero woman with the information that the alleged burglar, Will Curtis, had brought them to her house, and we had information that this alleged burglar had been arrested, and we were representing him. Mr. Cuilla and I said nothing to the detectives about us having the alleged stolen property in our possession. We, *as lawyers,* realized the fact that we were employed in representing Will Curtis, and probably the woman, if anything turned up against her, and it would not have been *good policy* for us as lawyers, in coming down in the Corporation Court to tell the detectives anything we knew about these goods, or where the goods could be found."

We can not understand how anyone could seriously contend that the testimony in this case was insufficient to sustain the verdict. We can not see how any honest juror therefrom could come to any other conclusion and find any other verdict than that of guilty against appellant. It clearly authorized the jury to find him guilty for fraudulently both receiving and concealing said stolen pistol with the full knowledge at the time that it was stolen when he both received and concealed it.

When appellant's partner testified as last quoted above, this occurred, which we quote from his bill as qualified by the trial judge:

"The court, wishing to understand the witness correctly, propounded this question to him: 'Do you mean to tell this jury and court that it is your policy as a practicing lawyer to conceal from the officers your knowledge of the whereabouts of stolen property then in your possession?'

"The witness did not answer the question and the court over objection of defendant asked this question: 'Do you say it would not have been policy where lawyers are representing a man charged with theft and burglary that it is not policy to inform the detective department where stolen goods can be found, if such stolen property was then in your possession?'

"To which the witness replied: 'You asked me if I thought it was policy to fail to give information to the detective department as to the whereabouts of that goods at that time?'

"The court then states: 'No, sir; the question was as to the stolen goods, whether you considered it policy to refuse to give information to the detectives about stolen property if such property was then in your possession.'

"To which question the witness answered: 'I did not testify that I refused to give such information.'"

He made many objections to the court's asking these questions and eliciting these answers. As thus qualified, this bill shows no reversible error. This court has held that it is perfectly proper for the court in order to understand a witness to reiterate a question, or have the witness explain his meaning. (Elsworth v. State, 52 Texas Crim. Rep., 1.) The court by this, we think, made no such intimation to the jury as would call for a reversal. The fact that the trial judge himself interrogates a witness will not require reversal when there is no showing that probable injury was done the accused thereby. (Harrell v. State, 39 Texas Crim. Rep., 204; Strapp v. State, 65 Texas Crim. Rep., 133, 144 S. W. Rep., 941; Mitchell v. State, 65 Texas Crim. Rep., 545, 144 S. W. Rep., 1006; Wragg v. State, 65 Texas Crim. Rep., 131, 145 S. W. Rep., 342.)

The court committed no error in overruling appellant's motion for a continuance because of the claimed absence and inability of his attorney to be present to represent him on this trial. His attorney was present and did represent him.

The only other bill appellant has is to the claimed exclusion of their attempt to have the negro woman Pero to prove up that she had signed a deed to them. The bill in no way discloses how this testimony on this point could have been material, nor what her answer would have been. The best we can make of it is that it was an apparent attempt at most to impeach her on a wholly immaterial matter.

There is no reversible error shown in this record, and the judgment will be affirmed.

*Affirmed.*

[Rehearing denied June 21, 1916.—Reporter.]