### Ina Rutherford v. The State.

No. 5312. Decided March 5, 1919.

**1.—Receiving and Concealing Stolen Property—Value—Felony.—Insufficiency of the Evidence.**

Where, upon trial in the District Court of the offense of receiving and concealing stolen property, the evidence was insufficient to show that the alleged stolen property which came into the possession of the defendant was of the aggregate value of $50 or over, the conviction could not be sustained, although defendant may have been aware of its being stolen property and concealed and destroyed the same with the intent to aid the thief to escape punishment or detection.

**2.—Same—Rule Stated—Intent—Value—Guilty—Knowledge.**

One who receives property without knowing at the time that it was stolen property but thereafter comes into possession of such knowledge, and then conceals or destroys the same with intent to aid the thief to escape punishment or detection, etc., would be guilty of receiving and concealing stolen property, but in order to make this offense a felony it must be shown that the property which actually came into his possession was of sufficient value to make it a felony, and where this value was not shown with sufficient certainty the conviction could not be sustained.

Appeal from the District Court of Marion. Tried below before the Hon. J. A. Ward, judge.

Appeal from a conviction of receiving and concealing stolen property; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Schluter & Singleton,* for appellant.—On question of insufficiency of the evidence; Arcia v. State, 9 S. W. Rep., 685; Murio v. State, 20 id., 356; Bryan v. State, 54 Texas Crim. Rep., 59, 111 S. W. Rep., 1035; Thurman v. State, 40 S. W. Rep., 795; Mazureczk v. State, 59 Texas Crim. Rep., 211, 128 S. W. Rep., 136; Forrester v. State, 69 Texas Crim. Rep., 62, 152 S. W. Rep., 104.

*E. A. Berry,* Assistant Attorney General, for the State.—On question of fraudulent intent: Kaufman v. State, 159 S. W. Rep., 58; Thurman v. State, 37 Texas Crim. Rep., 646; Moseley v. State, 36 id., 578; Polk v. State, 60 id., 150.

LATTIMORE, JUDGE.—In this case appellant was tried in the District Court of Marion County for the offense of receiving and

concealing stolen property and upon conviction was punished by confinement in the State penitentiary for two years.

It appears undisputed from the evidence that three negro men took a trunk belonging to a Mrs. Kirkland in such manner as that the taking constituted theft. After breaking open said trunk, they divided its contents into "three piles," and each took one pile. The names of the negro men were Roy Calvin, Buddie Jackson and one Fox. Fox seems never to have been apprehended and the record does not disclose what became of his portion of the loot. Jackson was arrested, as was also Calvin and both seem to have pleaded guilty. There is nothing in the record to show what was in the "pile" of either Jackson or Fox, nor is it shown what part of the property was recovered by the owner. The property was taken at night and about seven o'clock the next morning Calvin came to the place where appellant, a negro woman whose husband was dead, lived with her four children and her father Calvin brought with him a bundle wrapped in a quilt which he asked appellant's permission to leave in a certain box in which he placed the bundle wrapped up in the quilt. Later in the day the sheriff came to the house, looked into the box, saw the quilt and asked appellant about it and she said it was hers, a fact, however, which she denied. After the sheriff departed, Buddie Jackson, one of the original takers, who lived next door to appellant, was at her house and she told him what had occurred and of the fact that Calvin had brought this bundle to her house, and asked him if he supposed it was part of the things that were taken. He seems to have looked at it and told her that he expected it was, and that she had better destroy it, and also advised her to burn it, and the record discloses that shortly thereafter the property was carried into the yard and burned, but just exactly by whom there is some contradiction, which is immaterial. The only article which was not destroyed appeared to be the quilt in which the other things were brought to appellant's home, and this was later identified by Mr. Kirkland, the husband of the owner of the trunk. Appellant was convicted of a felony and in order to sustain this verdict the State must have shown beyond a reasonable doubt, not only that she received and concealed stolen property but that the aggregate value of such property was over fifty dollars. We have no doubt but that one who receives property without knowing at the time that it was stolen, but who thereafter comes into possession of such knowledge and after becoming aware of such fact, conceals or destroys the property with intent to aid the thief to escape punishment or detection, or with intent to deprive the owner of the same, would be guilty of the offense herein charged, but as stated above, in order to constitute such offense a felony it must be shown not only that the property lost was of sufficient value, but that which actually came into the possession of the party accused was of sufficient value to make it a felony.

In this case the State used as witnesses, Roy Calvin, Buddie Jackson, two of the original takers of the property, Genevieve Jackson, the wife of Buddie Jackson and one Elijah James who was a boarder in appellant's house and seems to have aided in disposing of the property. Roy Calvin testified as to what property he carried to the appellant's home, describing it on both direct and cross-examination. Genevieve Jackson, the wife of Buddie Jackson, also testified to having seen the property while in appellant's house and she described the same also, and a careful comparison of their testimony shows that a great deal of the property mentioned in the indictment was never carried to appellant's home; in fact we think it is a fair deduction, resulting from such examination of their testimony, to say that this property traced into appellant's possession and set out in the indictment was a lace scarf, some unidentified lace, six napkins, one sheet, one handkerchief case, one ball of wool thread, one bed spread, some table covers (numbers not shown), two knitting needles, one towel, one dresser scarf and one center-piece.

Mr. Kirkland, husband of the owner of the trunk, was the only witness as to values. He was asked specifically as to the value of each of the articles set out in the indictment,' and as to those which were shown by the witnesses Roy Calvin and Genevieve Jackson to have been carried to appellant's home, we reproduce here his testimony:

"I am acquainted with that lace scarf that was lost, but really I could not say whether it was worth $12 or more, or it might be a little less; I would judge a lace scarf like that would be worth from $7 to $10 or $12, or maybe more than that. I don't know exactly what the hand-made lace consisted of, or how much there was; she had a whole lot of lace, but I don't know how much was in that trunk; there was a whole lot of lace in the trunk which was worth $10 or more. The value of the lace that was lost was $10 or $15. All of the items that are charged in that indictment were lost and a good deal besides that. As to the six linen napkins, they were 27″ x 27″ or 24″ x 24″; they would cost from $7 to $10 a set; $7.50 is a reasonable price for those six napkins . . . I was acquainted with the cash market value of that linen sheet; you can't buy a linen sheet for less than $4 or $5. One handkerchief case was lost, but I am not acquainted with the value of it; I think my wife bought it at Christmas time. It had some value and I think it would sell for $2 or $2.50. I don't know about the picture. There were two balls of woolen thread, which cost 50 cents a ball; they were lost, I don't know about the lace scarf; it might have been a lace piece of some kind. . . . $15 is cheaper than you could duplicate that same bed-spread to-day for; it was a large size, one of those heavy work flowered counterpanes. The five table covers marked at $6 apiece were worth more than you have got them down for; they were worth more than $6 a piece; you can't get good table damask

for less than $2 or $2.50 a yard. There were six of them and they were made up. There was some silk thread lost; but I don't know whether it was in that or not. I know my wife had some knitting needles, but I don't know where she had them; my wife paid $1 for them. . . . The six plain towels, marked at $3, were in there and I suppose they were worth $3.50, or 75 cents a piece, that size towel and that kind. . . . There was a dresser scarf which was used in front of her dresser; I suppose it was worth $3 or $4, I don't know exactly, but I think that would be the right value for it. There was a center piece, the cash market value of which was $5 or $6; it was one of those crocheted pieces for a libary table, I suppose it was worth $5 or $6."

This is all the State's testimony as to the value of the property which was carried to appellant's home. It will be observed from reading said testimony that the witness says of the center piece: "I suppose it was worth $5 or $6;" and that he says of the dresser scarf; "I suppose it was worth $3 or $4, I don't know exactly, but I think that would be the right value for it;" and of the towels: "I suppose they were worth $3.50, or 75 cents a piece; that size towel and that kind;" and of the knitting needles: "I know my wife had some knitting needles, but I don't know where she had them; my wife paid one dollar for them;" and of the bed spread the witness said: "$15 is cheaper than you could duplicate that same bed-spread to-day for; it was a large size, one of those heary work flowered counterpanes;" and of the sheet he said: "I was acquainted with the cash market value of that linen sheet; you can't buy a linen sheet for less than $4 or $5." As to the napkins he says: "They would cost from $7 to $10 a set; $7.50 is a reasonable price for those six napkins." As to the lace he says: "I don't know exactly what the handmade lace consisted of, or how much there was; she had a whole lot of lace, but I don't know how much was in that trunk; there was a whole lot of lace in the trunk which was worth $10 or more. The value of the lace that was lost was $10 or $15."

Taking the whole of the articles shown by Roy Calvin and Genevieve Jackson to have been traced into the possession of appellant, and giving them even the supposed values shown by the testimony of the witness Kirkland, it would barely make the aggregate value of the lot more than $50. But we cannot sanction such proof as this. The witness Kirkland "supposed" the value of the center-piece, of the dresser scarf, of the towels to be such and such a sum. He says the bed spread could not be duplicated for $15; that the linen sheet cannot be bought for less than four or five dollars; that his wife had a lot of handmade lace which was lost, which was worth $10 or more; that the lace scarf might be worth $12 or more or less, he really could not say; he judges it worth from $7 to $10 or $12 or maybe more than that.

Appellant is only an ignorant negro woman but this court will

subject the record in her case to the same legal test as to the sufficiency of the proof that it would of any other citizen convicted of crime. Evidence as to the value of the property that was claimed to have been carried to appellant's home is not shown with anything like the sufficiency required by law.   The value of the property testified to by the witness with any reasonable degree of certainty falls far short of $50.

For the reason that the evidence does not show with sufficient certainty the value of the property carried to appellant's house to be enough to make it a felony, the judgment of the lower court is reversed and cause remanded.

*Reversed and remanded.*