J. B. HARDEMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 52945.

Court of Criminal Appeals of Texas.

May 25, 1977.

Rehearing Denied July 6, 1977.

Melvyn Carson Bruder, James P. Neill, Jr., Dallas, for appellant.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr. and Fred Davis, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of concealing stolen property; the prosecution was under the former Penal Code, Article 1430, V.A.P.C. (1925); the punishment is imprisonment for 2 years.

The appellant asserts that: (1) the evidence is insufficient to sustain the conviction; (2) the indictment was unlawfully amended; (3) the evidence is insufficient to show that the grand jury used reasonable diligence to determine from whom the appellant received the stolen property; (4) evidence of extraneous offenses was erroneously admitted; (5) the prosecutor was permitted to argue matters not supported by evidence; (6) the court erroneously overruled the amended motion for new trial after it erroneously found that the State need not reveal the name of an informer and erroneously found that the State had not suppressed evidence which would have been favorable to him; and (7) the trial court erred by not following the provisions of Article 36.27, V.A.C.C.P., when it communicated with the jury. Both the appellant and the State have submitted briefs of superior quality.

It was alleged that the appellant, on or about September 25, 1971, knowing that it was stolen, received and concealed a traxacavator of the value of $30,000. It was also alleged that the traxacavator was the property of M. L. Gregory and the appellant received it from a person whose name was to the grand jury unknown.

We will first discuss the appellant's assertion that there is insufficient evidence to sustain the conviction. On March 9, 1972, on ranch property belonging to the appellant, several law enforcement officers found three pieces of large machinery, a 977K traxacavator, which is the piece of machinery described in the indictment, a D8 bulldozer, which was stolen in September, 1971, from William Neal, Jr., and a 977L traxacavator, which was stolen in September, 1971, from Jim Alexander. Also, a bulldozer, which was stolen in September, 1971, from Noble Construction Company, was found at the appellant's place of business in Justin.

The traxacavator belonging to M. L. Gregory was stolen on the weekend of September 25–26, 1971; according to the appellant's testimony, the traxacavator appeared on his ranch near Justin the last part of September, 1971. The Gregory traxacavator and the other stolen traxacavator were found in a grove of pecan trees approximately two hundred yards from a country road. The pecan grove was in a pasture, and the pasture was bordered with a fence in which there was a locked gate. The D8 bulldozer was found behind a barn on appellant's ranch.

The appellant came to the scene just after the officers saw the machinery in the pasture; he told one of the officers: "Well, I knew the damned stuff was stolen because they brought it here in the middle of the night." Identification plates and serial numbers had been removed from the machinery, fictitious numbers had been applied, the decals of the owners had been removed, and the machinery had been repainted. Although it is controverted, there

is evidence that the traxacavator described in the indictment had been used to work on an earth dam on the appellant's ranch.

The appellant testified that he had purchased the small bulldozer from one Bill Myers, and a bill of sale for that bulldozer was offered by the appellant and admitted in evidence. The appellant testified, apparently to explain the presence of the machinery on his land, that he had agreed to permit Myers to hold an auction sale of heavy machinery in the pasture.

▇▇▇ The appellant's statement, that he knew the property was stolen because it was brought to his property in the middle of the night, is evidence that the appellant knew the machinery was stolen. That the property was not fully hidden from view does not mean it was not concealed. Stolen property may be concealed by changing it so that its owners would not likely recognize it. *Pieratt v. State*, 141 Tex.Cr.R. 45, 146 S.W.2d 997 (1941). The word "conceal" is not to be given the literal meaning of hiding, but in contemplation of the statute, property may be concealed by handling the property in a manner that would throw the owner off guard in his search for it. *Trammell v. State*, 511 S.W.2d 951 (Tex.Cr.App. 1974); *Beaty v. State*, 172 Tex.Cr.R. 343, 356 S.W.2d 802 (1962); *Barker v. State*, 109 Tex.Cr.R. 67, 2 S.W.2d 851 (1927); *Cuilla v. State*, 80 Tex.Cr.R. 41, 187 S.W. 210 (1916). There is evidence from which it may be inferred that the traxacavator was used on the appellant's property for his benefit, and there was an attempt to conceal the property by repainting and changing identifying serial numbers. The appellant admitted he knew the machinery had been on his property for almost six months before it was discovered there by law enforcement officers. The evidence is sufficient to sustain the jury's verdict finding the appellant guilty of concealing property knowing that it was stolen.

▇▇▇ The appellant also asserts that the trial court erred by permitting the prosecution to proceed to trial on an unlawfully amended indictment. This objection is raised for the first time on appeal; no objection on this ground was made at the time of trial. The appellant argues that the date in the indictment on which it was alleged the offense was committed was changed from either 1972 or 1973 to 1971. It is said that a handwritten note, its author not being revealed by the record, was attached to the indictment with a paper clip; although it was not introduced in evidence, the trial court ordered that the note be included in the record. Even if we are authorized to consider this note, we find no support for the appellant's contention that the indictment was amended after it was returned by the grand jury on January 22, 1974. The written note states that the file was examined 3/16/74, presumably by the judge in whose court the indictment was returned and filed; the note reads: "Date —appears to be 1971 with the one written in ink." Since there is no evidence to show whether the date, if it was changed, was changed before or after the indictment was returned, there is a presumption of regularity. It must then be presumed that the date was changed before the grand jury returned the indictment and that the indictment was not unlawfully amended. See *Maier v. State*, 90 Tex.Cr.R. 459, 235 S.W. 576 (1921).

The appellant urges the evidence is insufficient to show that the grand jury used reasonable diligence to determine from whom he received the stolen property. A premise upon which the appellant's contention rests is that, even though his conviction was for concealing stolen property, the conviction depends on the unlawful receipt of the stolen property. He relies on and cites *Thurman v. State*, 37 Tex.Cr.R. 646, 40 S.W. 795 (1897). In that case the Court said:

"The receiving and concealing are two distinct offenses; that is, a person may be guilty of receiving the stolen property, though he made no concealment thereof. It would be difficult, however, for him to conceal the stolen property without having received the same."

If this language can be construed to mean that a defendant may not be guilty of concealing property unless he is also guilty

of receiving the stolen property, the statement is wrong. There is much authority supporting the proposition that although a defendant is not guilty of unlawfully receiving property, knowing it was stolen, he may be guilty of unlawfully concealing the property, after learning it was stolen. See *Trammell v. State*, supra; *McBride v. State*, 490 S.W.2d 560 (Tex.Cr.App.1973); *Brown v. State*, 152 Tex.Cr.R. 39, 211 S.W.2d 234 (1948); *Rodriguez v. State*, 134 Tex.Cr.R. 317, 115 S.W.2d 905 (1938); *McLeroy v. State*, 131 Tex.Cr.R. 118, 97 S.W.2d 184 (1936); *Ryan v. State*, 128 Tex. Cr.R. 482, 82 S.W.2d 668 (1935); *Salcido v. State*, 126 Tex.Cr.R. 281, 70 S.W.2d 706 (1934); *Rutherford v, State*, 85 Tex.Cr.R. 7, 209 S.W. 745 (1919); *Falcone v. State*, 84 Tex.Cr.R. 279, 206 S.W. 845 (1918); *Kahanek v. State*, 83 Tex.Cr.R. 19, 201 S.W. 994 (1918); *Cuilla v. State*, supra.

■ Since this conviction is for concealing stolen property and not for receiving stolen property, the State, to sustain the conviction, did not have to prove from whom the property was received. It follows that to sustain the conviction for concealing stolen property it was unnecessary to prove that the grand jury used reasonable diligence to ascertain from whom the appellant received the property.

■ The appellant complains of the admission of evidence of an extraneous offense since there was no evidence to connect him with the commission of that offense. Evidence was admitted to show that a truck and trailer were stolen during the night of September 25–26, 1971. There is strong circumstantial evidence that this truck and trailer were used to transport stolen machinery from the place where it was stolen to the appellant's property. it is necessary in a prosecution for receiving and concealing stolen property to prove the theft of the property. *Carpenter v. State*, 156 Tex.Cr.R. 461, 243 S.W.2d 834 (1952); *Poon v. State*, 120 Tex.Cr.R. 522, 48 S.W.2d 307 (1932). This uncharged offense was admissible to prove the theft of the machinery and was admissible even though it was a collateral criminal offense and even though there was no evidence to show that the appellant, who was charged with receiving and concealing stolen property, was guilty of the theft of the truck and trailer. In these circumstances, *Fentis v. State*, 528 S.W.2d 590 (Tex.Cr.App.1975), *Landers v. State*, 519 S.W.2d 115 (Tex.Cr.App.1975); and numerous other cases cited by the appellant have no application. Moreover, the owner of the truck had already testified that the truck had been stolen before an objection was made. See *Guzman v. State*, 521 S.W.2d 267 (Tex.Cr.App.1975).

The appellant next complains that the court admitted evidence of an extraneous criminal offense unrelated in time and circumstances to the offense charged in the indictment. This complaint relates to the testimony of Texas Ranger Alford. In answer to the defense attorney, on cross-examination, Alford testified he had met the appellant while investigating a case in the appellant's office. On redirect examination Alford testified the investigation was concerned with business machines that had been reported stolen in Tennessee. The machine found in use in appellant's office was a $1,700 calculator. This investigation took place in "early 1971." The appellant admitted to the officers that the traxacavator found on his property was placed there in late September, 1971. The evidence concerning the business machine was admissible under the provision of V.T.C.A. Penal Code, Section 31.03(c)(1). V.T.C.A. Penal Code, Section 31.03, in pertinent part, provides:

"(a) A person commits an offense if, with intent to deprive the owner of the property;

"(1) he obtains the property unlawfully; or

"(2) he exercises control over the property, other than real property, unlawfully.

"(b) Obtaining or exercising control over property is unlawful if:

"(1) the actor obtains or exercises control over the property without the owner's effective consent; or

"(2) the property is stolen and the actor obtains it from another or exercises control over the property, obtained by another knowing it was stolen.

"(c) *for purposes of Subsection (b)(2) of this section* :

"(1) *evidence that the actor has previously participated in recent transactions other than, but similar to, that which the prosecution is based is admissible for the purpose of showing knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not guilty* ;" (Emphasis added.)

The offense was committed before, but the trial was after, the effective date of the new Penal Code. V.T.C.A. Penal Code, Section 31.03(c)(1), is a procedural rather than a substantive provision. Procedural provisions in effect at the time of the trial are applicable. *Wilson v. State*, 473 S.W.2d 532 (Tex.Cr.App.1971); *Thompson v. Missouri*, 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898); *U. S. v. Papworth*, 156 F.Supp. 842, affirmed 5 Cir., 256 F.2d 125, certiorari denied 358 U.S. 854, 79 S.Ct. 85, 3 L.Ed.2d 88, rehearing denied 358 U.S. 914, 79 S.Ct. 239, 3 L.Ed.2d 235; *James v. State*, 72 Tex.Cr.R. 457, 163 S.W. 61 (1914); *Ybarra v. State*, 73 Tex.Cr.R. 70, 164 S.W. 10 (1914); *Askew v. State*, 59 Tex.Cr.R. 152, 127 S.W. 1037 (1910). We hold that the transaction concerning the business machine was admissible as it was sufficiently recent and similar to the transaction for which the appellant was on trial.

The appellant urges that the prosecutor, over objection, argued before the jury a matter unsupported by evidence. It is necessary to summarize and quote from the record to understand this contention. The Denton County Sheriff was a defense witness; during cross-examination, he testified that there had been an assistant district attorney in Denton County named Bob Ames. The Sheriff denied that Bob Ames had resigned as a result of pressure brought in this case.

Defense counsel, during his argument at the guilt-innocence phase of the trial, said:

". . . And remember, where is Bob Ames, the D.A. that supposedly quit? Where is the thief? And where is that rail that he mentioned, or whatever it was, that was burnt off of the cab? They never found that at all out on Hardeman's ranch. They didn't find that. There's no evidence of that at all. It's just like Ames and the thief."

The complaint is about the following argument of the prosecutor made at the guilt-innocence phase of the trial:

"Now, where is Bob Ames. I wish we could go into that, where Bob Ames is today. I don't know how far the law lets me go in replying to that particular comment, so I'm not going to take a chance on it, I'm not going to take a chance on it, but there is a reply and I want you, based upon the evidence that you know of in this case and your common sense, to think of the reply I would make on that particular comment.

"MR. FRIEZE: Object to his implication. It's out of the record. There's absolutely no proof Bob Ames ever existed now or ever. Request the jury be instructed to disregard that comment of Mr. Davis.

"THE COURT: Is that the reason you want me—if that's your reason, overruled.

"MR. FRIEZE: Exception."

The record contains evidence of the existence of Bob Ames; the defense counsel's statement in his objection that there was no proof that Bob Ames ever existed now or ever and that this argument was outside the record was incorrect. The trial court's ruling was proper in view of the objection made. In his brief on appeal the appellant asks this Court to consider the complained-of argument in connection with a later statement of the prosecutor. The later statement, which is taken out of context and to which there was no trial objection, was that: ". . . we have brought forth every bit of evidence that the law allows us to bring." The argument was not improper, and we perceive no error.

The appellant complains of the court's overruling his amended motion for new trial. He argues that he established the existence of an informer whose name he was entitled to know; furthermore, he argues that the State suppressed evidence of the existence and name of the informer.

The identity of the informer need not be disclosed unless the informer (1) participated in the offense; (2) was present at the time of the offense or arrest; (3) was otherwise shown to be a material witness to the transaction or as to whether the appellant knowingly committed the act charged. *Carmouche v. State*, 540 S.W.2d 701 (Tex. Cr.App.1976); *Barber v. State*, 511 S.W.2d 937 (Tex.Cr.App.1974); *James v. State*, 493 S.W.2d 201 (Tex.Cr.App.1973); *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

After the appellant's amended motion for a new trial had been denied, and six months after he had been sentenced and had given notice of appeal, his counsel filed another "Amended Motion for New Trial;" in response to the motion, the trial court entered an order which, in part, reads:

"[T]he defendant did on July 21, 1975, present to the Court an Amended Motion for New Trial, and said Motion was marked with a filemark for record purposes only, the Court ordering that a copy of said motion be served on the State with a hearing to be conducted at a later date to determine if good cause exists for an extension of time for filing such Amended Motion for New Trial;"

An evidentiary hearing was held on the appellant's amended motion for new trial. After hearing the evidence the trial judge expressed doubt as to whether he should, but he did, grant the appellant's motion to extend the time for filing the "Amended Motion for New Trial." Although the appellant was resentenced after the hearing, the appellant's first sentence was never vacated and set aside. Our review of the record fails to show good cause for the extension of time to hear the motion for new trial. *McCuin v. State*, 504 S.W.2d 512 (Tex.Cr.App.1974); *Menasco v. State*,

503 S.W.2d 273 (Tex.Cr.App.1973); *McDonald v. State*, 501 S.W.2d 111 (Tex.Cr. App.1973). For this reason alone the trial court did not err in overruling the amended motion for new trial. See e. g., *Robinson v. State*, 505 S.W.2d 298 (Tex.Cr.App.1974); *Defore v. State*, 460 S.W.2d 128 (Tex.Cr. App.1970); *Bennett v. State*, 450 S.W.2d 652 (Tex.Cr.App.1969); *Nelson v. State*, 464 S.W.2d 834 (Tex.Cr.App.1971); *Roberts v. State*, 493 S.W.2d 849 (Tex.Cr.App.1973); *Hines v. State*, 495 S.W.2d 252 (Tex.Cr.App. 1973). However, even if good cause had been shown to permit the late filing of the amended motion for new trial, a review of the evidence heard by the trial court does not show the trial court abused its discretion in denying a new trial.

H. H. Davis, the chief investigator of the Dallas County District Attorney's Office, was one of the officers present when the stolen machinery was found in the appellant's pasture. When the appellant came to the scene he signed a written consent form giving the officers permission to search his premises. H. H. Davis signed the consent form as a witness to the appellant's signature on the form. That form was admitted into evidence on the trial. Davis was not a witness either before the grand jury or on the trial of the case. Davis was called as a witness on the hearing of the untimely filed amended motion for new trial.

Davis testified that he had been given money by two insurance companies to pay an informer who had given information leading to the recovery of the stolen machinery. Davis had promised his informer that his name would not be revealed, and Davis was concerned that if he revealed the informer's name the informer would be harmed. At the time he testified, Davis said he did not know whether his informer was alive or dead. Davis testified that his informer said he had received the information given Davis from another person whose name the informer could not or would not tell Davis. Davis testified he was told by his informer that he did not personally participate in stealing, transporting, or concealing the stolen machinery. The in-

former did not tell Davis who stole or transported the machinery. Davis did not ask the informer if he knew the appellant, but Davis was of the opinion the informer did not know the appellant. The informer did not know who owned the land where the machinery was found. Davis testified that when he went to look for the stolen property he was not accompanied by the informer.

The appellant's counsel at the hearing of the untimely motion for new trial offered in evidence a memorandum from a file of one of the insurance companies that had given the reward money to be paid to the informer. The court admitted this memorandum for a bill of exception. It purports to be a summary made by agents of the insurance company of what Davis had told them regarding the recovery of the machinery. The memorandum states that Davis was given information by an informer who was a thief incarcerated in the county jail. The informer contacted Davis, telling him he had information which could lead to the recovery of several pieces of stolen machinery. Davis received a verbal description of the location from the informer, but when he could not find the property the informer was taken from the jail and he helped find the stolen property. The informer named two men who actually stole part of the machinery. The informer said he followed the men while they transported one of the machines and picked them up after they abandoned the stolen vehicle on which they had transported the stolen machinery.

The testimony of Davis and the evidence presented at the hearing on the untimely filed motion for new trial would not require that the State disclose the name of the informer under the authority cited by the appellant. *James v. State*, supra, and *Roviaro v. United States*, supra. Since the appellant was not entitled to know the name of the informer, the State did not wrongfully suppress evidence of the existence and the name of the informer. The memorandum contained hearsay statements of which the author of the memorandum did not have first-hand knowledge, and if the memorandum was admissible at all, it would only have been admissible for the purpose of impeaching Davis. The trial court resolved any conflicts in the evidence and denied the appellant a new trial. The trial court did not abuse its discretion in denying the appellant a new trial.

The appellant's remaining complaint is that the trial court erred in communicating with the jury without complying with the provisions of Article 36.27, V.A.C.C.P. The appellant urges that the court communicated with the jury without reading the communication in open court and without securing a waiver from the defendant as required by Article 36.27, V.A.C.C.P. There is a stipulation in the record, signed by the appellant and his counsel, which reads as follows;

"COMES NOW the Attorney for the State, the Attorney for the Defendant and the Defendant in the above styled and numbered cause, in open Court, and state that they have no objection to the Court allowing the jury to separate after the jury has begun its deliberations in either the guilt or innocence or punishment phase of the trial and further, *that each has no objection and agree that if the jury should write a note requesting any information from the Court, that the Court may send its answer into the jury room for the jury, after giving all parties an opportunity to make objections, if any, to the same, without the necessity of bringing the jury into open Court and having the Court's answer read to the jury.*" (Emphasis added.)

During jury deliberations the following written communication was received from the jury foreman:

"The Verdict Form states 'receiving *and* concealing.' We understood the law to be 'receiving *or* concealing.' Does the defendant have to be found guilty on just one or both counts?"

This communication was answered in writing by the trial judge as follows:

"You have been instructed in the charge now before you. You are not entitled to further instruction as to the law in connection with this question."

At the same time that the jury's communication was answered an additional verdict form was submitted to the jury that gave the jury the alternative of finding the appellant guilty of either receiving stolen property or concealing stolen property. The appellant's counsel made written objections to the court furnishing the jury the additional form of the verdict. After receiving the additional verdict form, the jury had all possible forms of verdict authorized by the court's charge, including one of "not guilty." In view of the quoted stipulation it appears the appellant waived the procedure provided for in Article 36.27, V.A.C. C.P. We perceive no error.

The judgment is affirmed.

Opinion approved by the Court.