# DECEMBER 1, 1943

## C. C. ARNIVAN V. THE STATE.

No. 22638. Delivered December 1, 1943.

The opinion states the case.

*Robert C. Benavides,* of Dallas, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a jail sentence of thirty days on a charge of receiving and concealing stolen property.

The complaint and information charge appellant with having received and concealed bicycle parts of the value of $15.00 from Jesse Edgar Carter, knowing that same had been stolen and that the true owner was John Edward Carnes. The case was tried to the court without a jury. Several questions are discussed in the appeal but only one will be considered at length in this opinion.

It appears that the Carter boy and his companion were apprehended by an officer; that they confessed the theft of a bicycle from Carnes; that they took it into the woods and stripped it and then sold the two wheels with the tires and inner tube to appellant. The theft occurred on the afternoon of September 9, 1942. The confession was made on the following morning. The officer and boys went immediately to the place of business conducted by appellant and his wife. Concerning the approach to appellant, the officer testified as follows:

"I located them in the possession of the defendant, C. C. *Arenivar.* They were at his home when I called on him. I called on him at his place of business the following day. That was within a day or two after this night. It was the next day. It was on the 10th. I went in and asked him if he had bought them. He said 'no' at first.

"I called on Charlie just more or less routine, I make on the bicycle shops at regular intervals, and I asked him if he had

bought anything lately, and he said 'yes' and I asked him if he had it written up in his book and he said 'yes.' They have a report book that they are required to report purchases on, and so I looked through his book and didn't find this particular entry posted, and so I specifically asked him about it, and he said everything that he had bought was written up. These particular wheels and tires were not written up at that time, and then I asked him definitely and specifically, if he had two tires and wheels and a schwinn brake that he had purchased from Carter and Haughey, and he said that he hadn't purchased them, that he didn't even know the boys and then I asked him to step over to the door of his shop and the boys were sitting in my car across the street, and I called for them to get out of the car, and when he saw them he said 'yes' that he had bought two tires and wheels from them. One of those boys was Jesse Edgar Carter, and I asked him where they were, and he said they were at his apartment. He lived around the corner there, and so I stayed in the shop and told him to get them and he went and got them and brought them in and delivered them to me.

"The Carter boy here identified those as the ones he had sold him the day before. I recovered them from the defendant here on or about the 10th day of September, 1942. It was on the 10th.

"I asked Charlie about the other bikes that the boys had stripped. They claimed that they had sold all the tires and wheels to Charlie, but Charlie denied having bought them. He told me that that was the only instance that he had bought anything from this boy."

On further cross examination, the officer stated that when he mentioned the names of the boys "the defendant didn't know the boys. When he saw the boys, he then immediately told me that he knew the boys and that he had bought the parts."

Carter testified that some sixty or ninety days prior to September 9th, he and his companion had sold some stolen parts to appellant; that after doing so, he had a discussion with appellant about them in which appellant admitted that he knew the parts to be stolen and agreed to buy other parts of a similar quality if delivered to him; that he did take other stolen parts to appellant thereafter and that the accused bought them. This evidence was admissible for the purpose of showing guilty knowledge and is clearly distinguishable from the cases relied upon by appellant for his contention that it was error to admit such testimony.

In a stipulation found in the record, it is agreed that the parts involved were of the value of $7.50. There is no evidence corroborating, or in any way intended to corroborate, the story of the previous transactions with the accused. The evidence, therefore, can have no avail. Sanders v. State, 164 S. W. (2d) 685.

The State relies upon the acts and conduct of appellant at the time he was approached by the officer as evidence of guilty knowledge. The conduct of a party when approached may suffice to show guilty knowledge or to corroborate that of a thief who has delivered him the property if, in fact, it is sufficient to do so.

It appears that a city ordinance, the terms of which are not in the record, required a report to be made by people buying second hand material under the conditions here involved, but it is not shown just how soon such reports are to be made. The officer further testifies that he had been on this detail for about eighteen months. At the beginning of such time, appellant told him that his wife did most of the bookkeeping and requested the officer to explain the duties in the matter to her; that it was the wife who usually called the officer about transactions that did not appear to be "on the up and up." She had assisted the officer in recovering stolen property. She had never reported any calls made by the Carter boy, and no merchandise which he had stolen had ever been found there prior to the one case involved. It further appears that the wife had not been in the shop between the time of the purchase of the parts the day before and the arrival of the officer.

We are now to consider one question as to whether or not the evidence, as detailed above, was sufficient to show guilty knowledge on the part of appellant at the time the parts were purchased. The purchase was made at appellant's home around the corner from the shop, after closing time on September 9th. Before the wife arrived at the place the next morning, the officer came, arrested the husband, and carried away the report blanks. We see no significance in his failure to have forwarded a report by this time. The State's witness testified that he usually received such reports from the wife; that he knew she did most of the bookkeeping; and that she had cooperated many times in the past with the officers. When the accused was approached, in a "routine manner," it does not appear that there was anything specifically calling for attention to the deal under investigation until the name of the boy was called. He replied that he had not bought anything from such a person and he

also testifies that he did not know the boys. This evidence is undenied. When the officer asked him to walk to the door and see the boys, he at once admitted the purchase from these two boys and told the officer where the goods were. He went to the house and brought them to the shop, giving a reasonable explanation as to why he did not do that as he came to the shop earlier. If he had denied the purchase after the thief was presented and attempted in any way to prevent the officer from completing his investigation and from the discovery of the goods, the question would be a different one. It occurs to the writer that an innocent man might have done everything that the officer detailed, and we are unable to discover anything in what took place indicating a guilty knowledge on the part of the accused at that particular time. It follows that there is nothing in the record corroborating, or tending to corroborate, the story told by the thief concerning previous transactions or the present one, which would impute knowledge and no affirmative act, or failure to act, on the part of the appellant, indicating such guilty knowledge.

The price which he paid is not sufficient to charge him with knowledge that they were stolen. It is admitted by the State that the reasonable market value of the goods was about $7.50. The boy wanted $6.00 for them and they paid him $5.00. The price was not unreasonable, under the circumstances.

Actual knowledge of the theft of the property is not always essential. Circumstances surrounding the transaction may sufficiently impute knowledge to the accused, or put him on notice sufficiently to require that he make an investigation concerning the title which the party offering the goods for sale has in his possession. Actual knowledge is not proven in this case, except by the story of the thief. There is no circumstances which would reasonably place the appellant on inquiry and none to indicate his knowledge. The evidence is insufficient to sustain the conviction.

The judgment of the trial court is reversed and the cause is remanded.