**James Gayle McBRIDE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45731.**

Court of Criminal Appeals of Texas.

Feb. 21, 1973.

---

4. No chain of custody argument has been raised in this cause.

Charles C. Cooke, III, Dan M. Boulware, Cleburne, for appellant.

Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal stems from a conviction for receiving and concealing stolen property where the punishment was assessed at two (2) years.

The indictment charged the appellant with receiving and concealing a 1963 Corvette automobile of the value of $600.00 belonging to Michael V. Kelly, II.

In three grounds of error appellant challenges the sufficiency of the evidence to sustain the conviction.

On May 7, 1969, Texas Highway Patrol Officers Busby and Wells, while driving on Farm Road 917 in Johnson County, observed a Chevrolet Corvette automobile parked near the "not real modern" house of Wesley Sharp. They drove to the house and, while having a conversation with Sharp, observed two other Corvettes. They obtained permission from Sharp to examine the cars and found the cars had

no license plates and that on at least two the vehicle identification numbers had been prized off. In the woods nearby the officers discovered a 16 foot tandem trailer containing approximately 50 tires and wheels and numerous other automotive accessories.

The officers determined that the two 1967 Corvettes and one 1963 Corvette they had found were stolen and had them and the trailer towed to Alvarado. There Officer Busby found the secret vehicle identification number on the 1963 Corvette to be 308375120678 and learned that it was registered to Michael V. Kelly, II.

Wesley Sharp's wife, Billy Jean, testified that on April 25, 1969, at 6:30 P.M., her brother-in-law, James Ray Sharp, and the appellant McBride and a third man named Charles brought some cars to her house and asked permission to store them there; that other cars were brought there at 9:30 to 10:00 P.M. and again at 1:00 A.M., 3:00 A.M. and 6:15 A.M. on April 26. She related the three men brought a total of ten cars, including an El Camino pickup, as well as a wrecker and a tandem trailer. She related that the appellant and her brother-in-law told her they had bought a car lot in Ft. Worth and wanted to store the cars to prevent theft of parts until they were ready to open the lot for business. She offered to buy one of the cars, a green Mustang, but the appellant informed her he intended to keep it for his wife.

Subsequently, the wrecker was moved, and then Mrs. Sharp was informed the pickup had been sold to a man named Bill and later some man came and took the pickup. On May 5 and 6, 1969, the appellant and James Ray Sharp moved all of the cars except the three Corvettes and the trailer.

Wesley Sharp generally corroborated his wife's testimony.

William Ross Cunningham testified that he and his brother, Donald, owned a car lot near Graham and one near Weatherford, and that in April, 1969, they had a conversation with the appellant, James Ray Sharp and a man named Elliott. The conversation related to removing certain cars including a 1963 Corvette from the two lots. The appellant and his companions were asked if they wanted the cars and were told that the cars were "probably stolen." Subsequently the cars were removed by the appellant and his companions. There was no consideration involved.

Later, Cunningham met with Officer James Hobbs of the Dallas Police and Bryam Clark of the National Automobile Theft Bureau and was told that the cars involved were stolen and should be returned immediately.

Then the Cunningham brothers met with the appellant, James Ray Sharp, and Elliott at the Black Stallion restaurant north of Alvarado and informed them of the conversation with Hobbs and Clark. The three told the Cunningham brothers the wrecker had been sold, and that the pickup had been parked on a street in Ft. Worth where it could be found by the police. Then, on May 5 and 6, 1969, the appellant and his companions began to return the cars to the Cunninghams at the Black Stallion and the Cunninghams would take the cars one at a time to the Dallas Police Department.

Three of the cars including a 1963 Corvette were never returned to the Cunninghams.

Officer Hobbs testified he had received a stolen car report on a 1963 Corvette belonging to Michael Kelly whose vehicle identification number was 308375120678 and that he went to Alvarado where a 1963 Corvette taken from the Wesley Sharp's place had been stored and found it had the same identification number.

Michael V. Kelly, II, a senior medical student, testified that his 1963 Corvette (VIN 308375120678) was stolen from a parking lot on March 17 or 18, 1969, while

he was on duty at the hospital, and that he had not given anyone consent or permission to take his vehicle, which he testified had a market value of $2,200.00 at the time of the theft. He related that when the car was returned to him the front bumper and the license plates were missing as well as certain tools which had been in the car.

The appellant offered no evidence.

 Initially, appellant contends the evidence is insufficient to show that he had actual knowledge that the property (1963 Corvette) was stolen. We do not agree. He was told when he received the cars from the Cunninghams they were "probably stolen." No consideration was paid for the cars. The vehicles were stored at Wesley Sharp's place near dusk or during the night and were hidden in bushes where they could not be seen from the highway. When the three Corvettes were found the license plates had been removed and the identification numbers had been prized off of at least two of the vehicles. Considering all of the evidence in the light most favorable to the jury's verdict we find no merit in appellant's contention. See Arnivan v. State, 146 Tex.Cr.R. 382, 175 S.W. 2d 598 (1943); McLeroy v. State, 131 Tex.Cr.R. 118, 97 S.W.2d 184 (1936).

Next, appellant contends the evidence is insufficient to show he intended to profit from the receiving or concealing of the stolen goods.

Although there is no direct evidence as to appellant's intent as to the 1963 Corvette, there is evidence with regard to some of the other vehicles. Bearing in mind no consideration was paid for the vehicles, the record reveals the El Camino pickup was sold, and the appellant told Billy Jean Sharp he intended to keep the green Mustang for his wife. Further, appellant told Mrs. Sharp he and the others intended to open up a car lot and these vehicles had been obtained in connection therewith.

Appellant's contention is non-meritorious.

Lastly, appellant contends that when William Cunningham told him that the cars were actually stolen, he and the others began to return the cars to Cunningham so they could be returned to their proper owners. However, the three Corvettes, including the one stolen from Michael Kelly, were not returned after the record reflects he had been definitely informed the vehicles were all stolen vehicles. A person is guilty of receiving stolen property if at the time he received the property he knew it was stolen. He is equally guilty, however, if, after he received it, he concealed the same after learning it had been stolen. See Rodriguez v. State, 134 Tex.Cr.R. 317, 115 S.W.2d 905 (1938).

The judgment is affirmed.