Clifford E. CHUDLEIGH, Appellant,

v.

The STATE of Texas, Appellee.

No. 51170.

Court of Criminal Appeals of Texas.

June 30, 1976.

Rehearing Denied Sept. 15, 1976.

Marvin O. Teague, Houston, on appeal only, for appellant.

Carol S. Vance, Dist. Atty., Clyde F. DeWitt, III and Terry G. Collins, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for "receiving and concealing stolen property." The jury assessed punishment at ten years and a $5,000 fine, probated.

In 1971, appellant owned an automobile wrecking yard at 9514 Mykawa Road in Houston known as C&M Auto Storage or C&M Used Cars. Carlton Jones, a co-defendant, was an employee at the yard.

On Feburary 5, 1972, Officer Box of the Pasadena Police Department went with an informant to appellant's business to look for stolen cars. Carlton Jones was on the lot. The informant pointed out four cars which he said were stolen. The officer took down the vehicle identification numbers. Officer Box received verification from the National Criminal Information Center Computer in Washington that these automobiles were stolen. On February 7, 1972, Officer Box returned to the lot with Officer McKinney of the Houston Police Department and others to execute a search warrant. While on the lot, they met Carlton Jones. Appellant arrived on the lot after a telephone call from Jones. The police checked the lot for stolen cars. There were approximately 1,000 cars on the lot at that time.

Officer McKinney testified that between twenty to twenty-five of the cars checked had been reported stolen. He also stated that about fifteen of the cars had no vehicle

identification numbers stapled anywhere on their exterior. (The vehicle identification numbers normally found on the dash or door of a car will be referred to in this opinion as the "serial number"; the number located somewhere on the frame of a car will be referred to as the "confidential number".) The officers then located the confidential numbers on the cars in the lot with missing serial numbers.

When a check was made with the Motor Vehicle Division of the Highway Department, from six to eight of the vehicles with missing serial numbers were found to be currently registered. The police located these cars. They found that the serial numbers on these cars were the same as the confidential numbers on the cars found on appellant's lot.

The police then took down the confidential numbers of the currently registered cars and found that these cars had been reported stolen in the past. Officer McKinney testified that only two of the stolen cars found on appellant's lot had a tow-slip. Such a slip would have shown that the car had been towed into the yard on police orders.

One of these cars without a serial number had a confidential number which was found to be registered to a Roel Fernandez in Houston. The police located this car at his address and towed it to the police station. At the station they checked the automobile's confidential number. The confidential number did not match the serial number located on the exterior of the car. The serial number was VIN # 21569S151781; the confidential number was VIN # 21869S310237.

The records of the Motor Vehicle Division of the Highway Department showed that the car with VIN # 21869S310237 was a 1962 four-door Chevrolet registered to George Cleek of Houston. The records of the Motor Vehicle Division showed that the car with VIN # 21569S151781 had been registered to an Earl M. Hailey and that title had been transferred from Hailey to C&M Used Cars and then to Roel Fernandez. The title indicated that this car was a 1962 four-door Chevrolet. VIN # 21569S151781 was the confidential number found on a wrecked and inoperable 1962 Chevrolet located on appellant's lot.

Mrs. Earl Hailey testified that she wrecked her 1962 Chevrolet in August of 1971. She and her husband decided to assign the title of their car to C&M Used Cars for towing it away. She delivered the title to the lot around the first part of August, 1971. The title was signed over to them by her husband. Mrs. Hailey testified that when title was relinquished the car was heavily damaged and not, in their opinion, worth repairing.

Roel Fernandez testified, through an interpreter, that on November 26, 1971, he bought a 1962 four-door Chevrolet from C&M Used Cars. He testified that a man filled out the documents transferring title and he only signed his name. The documents reflect that Carlton Jones signed the seller's affidavit and that appellant notarized it. The documents also show that the car sold to Fernandez had been owned by Earl Hailey. The car which Fernandez purchased was operable when he bought it.

Appellant testified that he was the sole owner of C&M Used Cars and that Carlton Jones worked for him. He related that he entered on the record the receipt of the Hailey car. He vaguely remembered the transaction on the sale of a car to Fernandez. He did remember that Fernandez had a smart interpreter with him. Appellant testified that he filled out the application for a certificate of title for Fernandez and notarized his signature. He also notarized the signature of Earl Hailey and dated it November 24, 1971 for the assignment of title to the dealer. His records showed that the Hailey car was delivered to him August 4, 1971. He filled out the assignment papers of the car to Fernandez and signed his name as notary after the signature of Carlton Jones, his agent. This was dated November 26, 1971.

Upon being questioned about the 20 or 25 stolen cars on his lot, he stated that his counsel had introduced evidence that there were more than 20 or 25 stolen cars on the

lot and he got tow-in tickets on those. (The check of the records by the officers showed only one or two cars were there which had a tow-in slip for them.)

Appellant also testified that Fernandez was probably the one who changed the identification number of the car after he had bought it.

On re-direct examination appellant testified that he attended Texas A & M from 1952 through 1959 and received three engineering degrees. He had worked for Brown and Root for six years in their electrical engineering department and had worked for another company as chief electrical engineer before becoming partner and later, owner of C&M Autos.

In grounds of error five and six, appellant contends that there was insufficient evidence to show that appellant knowingly received stolen property. The Cleek car was on appellant's lot at the time of the sale to Fernandez. The vehicle identification number had been changed to that of the Hailey car which had been wrecked and was still on the lot at the time of the search. Appellant filled out the papers for the sale of the car. He did not put the date on the transfer of the Hailey car to him until November 24, 1971 even though it had been delivered to him August 4, 1971. The evidence set out above is sufficient to show that appellant possessed and knew the car which was sold to Fernandez was stolen.

■■■ Knowledge that property was stolen can be shown by circumstantial evidence. Changing of the vehicle identification number is evidence of concealment. A person can be guilty of concealing stolen property if after receiving it he conceals the property after learning it was stolen. *McBride v. State,* 490 S.W.2d 560 (Tex.Cr. App.1973). Under all of the evidence, the jury was warranted in its conclusion that appellant knew the car was stolen and thereafter concealed it and later sold it to Fernandez. See *McBride v. State,* supra; *Potter v. State,* 481 S.W.2d 101 (Tex.Cr. App.1973).

In grounds of error seven and eight appellant contends that there was no evidence that the automobile sold to Fernandez was actually stolen from George Cleek, the registered owner. The widow of George Cleek testified that her husband died in July of 1973. She testified as follows:

"Q. (Prosecutor) Will you please direct your attention to the month of June, 1971, ma'am, and tell the court and the jury whether or not the car belonging to your husband was stolen?

"A. Yes. It was stolen."

This evidence was not objected to. There was no motion to strike the testimony. This with the other evidence set out above is sufficient evidence to support a finding by the jury that George Cleek's automobile had been stolen.

In grounds of error one through four appellant argues that the trial court committed fundamental error by giving an erroneous instruction to the jury during the punishment stage of the trial which caused a void verdict. Although the offense in this case occurred while the old penal code was in effect, appellant elected to be punished under the 1974 penal code.

The charge given to the jury at the punishment stage was as follows:

". . . If you find beyond a reasonable doubt the value of property was Two Hundred Dollars or more but less than Ten Thousand Dollars you will find the defendant guilty of a third degree felony.

"If you find beyond a reasonable doubt the value of the property was more than Twenty Dollars but less than Two Hundred Dollars you will find the defendant guilty of a Class A Misdemeanor.

"You are instructed that the punishment for third degree felony is any term of years in the penitentiary of not less than two years nor more than ten years and/or a fine up to Five Thousand Dollars. Therefore, you will assess the punishment, upon said finding of guilty, at any term of years not less than two years nor more than ten years in the Texas

Department of Corrections and/or a fine up to Five Thousand Dollars.

"You are instructed that the punishment for Class A Misdemeanor is a fine not over Two Thousand Dollars, or not over one year, in jail, or both fine and jail."

During jury deliberations, the jury sent a request for further instruction to the judge:

"Is it necessary that we fill in years and amount of fine. Or can we assess a fine.

/s/ A. M. Taylor
Foreman"

The judge replied to the request:

" . . . You are instructed that in answer to your question, the charge furnished you on Page one provides for the punishment. You may assess a fine only. You may assess confinement only, or you may assess a fine and punishment of confinement, as you may see fit, based upon the evidence before you.

/s/ Miron A. Love
Judge"

Appellant contends that the judge erred in telling the jury that they could assess a fine only. Appellant argues that for a third degree felony, V.T.C.A., Penal Code, Section 12.34, provides for a prison term and a fine, but not for a fine only.

██ There was no objection to the court's reply to the jury's request for further instruction. The jury assessed a prison term and a fine. This verdict was permissible punishment for a third degree felony. No reversible error is presented because appellant has not shown how he was harmed by the erroneous instruction. *Daniels v. State*, 527 S.W.2d 549 (Tex.Cr.App.1975). This was beneficial and not harmful to appellant. Grounds of error one through four are overruled.

In his ninth and tenth grounds of error appellant contends that the trial court erred in not following the jury's assessment of punishment. The jury's verdict on punishment reads as follows:

" . . . and assess his punishment at confinement in the Texas Department of Corrections for a period of 10 years, and/or a fine of $5,000.00; we further find that the defendant has never been convicted of a felony in this State or any other State, and has never heretofore been given a probated sentence, and we recommend that the sentence given above in this case be probated by the Court.

/s/ Foreman"

The judge's probation order required that the fine be paid within the twenty-day period prior to any motion for new trial. Where the jury recommends probation for the sentence and the fine, the trial court cannot order that the fine be paid. *Shappley v. State*, 520 S.W.2d 766 (Tex.Cr.App. 1975).

In *Balli v. State*, 530 S.W.2d 123 (Tex.Cr. App.1975), this Court in a statement not necessary to the disposition of the case wrote that a punishment of ten years' imprisonment plus a fine was unauthorized in probation cases.

The pertinent parts of Article 42.12, V.A. C.C.P., The Adult Probation and Parole Law, are as follows:

"B. Probations

"Sec. 3. The judges of the courts of the State of Texas having original jurisdiction of criminal actions, when it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public as well as the defendant will be subserved thereby, shall have the power, after conviction or a plea of guilty for any crime or offense, *where the maximum punishment assessed against the defendant does not exceed ten years imprisonment, to suspend the imposition of the sentence and may place the defendant on probation or impose a fine applicable to the offense committed* and also place the defendant on probation as hereinafter provided. In all cases where the punishment is assessed by the Court it may fix the period of probation without regard to the term of punishment assessed, *but in no event may the period of probation be greater than 10 years or less than the minimum pre-*

scribed for the offense for which the defendant was convicted. Any such person placed on probation, whether in a trial by jury or before the court, shall be under the supervision of such court.

"Sec. 3a. Where there is a conviction in any court of this State and *the punishment assessed by the jury shall not exceed ten years, the jury may recommend probation for a period of any term of years authorized for the offense for which the defendant was convicted, but in no event for more than ten years,* upon written sworn motion made therefor by the defendant, filed before the trial begins. *When the jury recommends probation, it may also assess a fine applicable to the offense for which the defendant was convicted.* . . ." Effective date June 14, 1973. (Emphasis added)

 After construing both Sections 3 and 3a together, it is apparent that the Legislature intended that probation could be granted by the judge for any term up to ten years' imprisonment and in addition a fine could be imposed. The statute provides that the term of probation could in no event be greater than 10 years or less than the minimum for the offense for which the defendant was convicted.

Section 3a provides that the jury may recommend probation in no event for a term of more than 10 years and "when the jury recommends probation (up to 10 years), it may also assess a fine applicable to the offense for which the defendant was convicted."

The intent of the Legislature, from the above sections, is that probation for a period up to 10 years may be assessed and a fine may also be assessed. The maximum punishment referred to in the statute applies to imprisonment only.

In following the language in the *Balli* case, supra, courts could face the problem of determining what is more than 10 years' punishment for probation purposes. Would a term of 9 years and 363 days plus a fine of $5,000 be more than ten years, probated?

We conclude that the court was in error in stating in the *Balli* case that ten years' probation plus a fine is unauthorized. To the extent that *Balli* is in conflict with this opinion, it is overruled.

The judgment is reformed to show that the $5,000 fine is probated to conform to the jury's verdict.

As reformed, the judgment is affirmed.