

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00299-CR
_____

TRAVIS BELL, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 10
Tarrant County, Texas
Trial Court No. 1478469

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

As part of a plea bargain, Travis Bell pleaded guilty to driving while intoxicated, misdemeanor repetition, and the trial court sentenced him to 60 days in the Tarrant County Jail. *See* Tex. Penal Code Ann. §§ 49.04(a), 49.09(a). On appeal, Bell attacks the trial court's order denying his motion to suppress.

Bell presents three issues:

(1) Was his first interaction with the police an encounter or a detention?

(2) Was his later detention supported by reasonable suspicion?

(3) Was his warrantless arrest for driving while intoxicated authorized under article 14.03(a)(1) of the code of criminal procedure?

We answer Bell's questions as follows:

(1) the first interaction between the police and Bell was an encounter,

(2) the police later had reasonable suspicion to detain Bell, and

(3) article 14.01(b) of the criminal-procedure code authorized Bell's warrantless arrest for public intoxication even though the officer arrested Bell for driving while intoxicated.

We will therefore affirm the trial court's judgment.

## Evidence

The parties stipulated that the arrest was without a warrant.

Officer John Schram testified that he was working the night shift with his patrol partner, Victor Rucker, on November 26, 2016, when he received a dispatch around 2:30 a.m. to respond to an accident. On arriving at the scene, he saw a white

sedan against the guardrail in the left lane and another vehicle, an SUV with its hazard lights on, farther up the road.

Schram acknowledged that he and Rucker were initially responding to a 911 call and had not seen any offense. They pulled up behind the white sedan in their fully marked police vehicle; its red-and-blue lights were on but not its siren. Defense counsel questioned Schram about why he turned the lights on:

> Q. When your red and blues come on, is that typically what you use to detain somebody?
>
> A. The red and blues come on because it was an accident and his vehicle was in a lane of traffic. So for safety of the public, so no one runs into the rear of Mr. Bell or us or anybody else, that's why we use the red and blues.
>
> Q. That's also, to be fair, the red and blues are also used when you pull people over, right?
>
> A. They are.

Schram later added that when making an arrest, he used different lights:

> Q. Why, in your estimation, did you need [the red-and-blue lights] in this situation?
>
> A. Just for the accident, so to make sure that no one ran into Mr. Bell or his vehicle or anything like that. That's why we only used the—the rear red and blues and not the front red and blues—
>
> Q. Was your—
>
> A. —like when we're making an arrest.

After the officers pulled up behind Bell's car, both Schram and Rucker, who were uniformed, got out of the patrol car. Schram checked on Bell's car while Rucker checked on the SUV.

Schram denied having approached Bell's car with his gun drawn, denied ordering Bell to the ground, and denied handcuffing Bell. But Schram acknowledged that if Bell had tried to run away on foot, Bell could have been "on the hook for an evading charge."

Schram encountered Bell outside the sedan's driver's side and asked for his driver's license and registration. Bell admitted to Schram that he was the car's only occupant and was also its driver. Medstar arrived and checked out the SUV's occupants, who did not require hospitalization; Bell declined medical treatment.

Schram observed that Bell had watery eyes and slurred speech, swayed and was unsteady when he walked, and smelled of alcohol. Bell told Schram that he was coming from the Mule Bar and that he had drunk two beers. Schram then decided that he needed to "investigate an offense."

To conduct a field-sobriety test at the accident scene would not have been safe, so Schram and Rucker took Bell in their patrol car to the nearest mall parking lot. Bell was not in handcuffs, and the officers did not tell him that he was under arrest.

Once they were in the parking lot, Schram administered the usual horizontal-gaze-nystagmus, the walk-and-turn, and the one-leg-stand tests. When performing the HGN test, Bell showed six out of six clues; he presented four of eight clues on the

walk-and-turn test and one of four on the one-leg-stand test. After Bell finished the tests, Schram determined that he had probable cause to arrest Bell.

Although Schram never saw Bell driving, Schram arrested him for driving while intoxicated. At the hearing, Schram denied having any exigent circumstances requiring the arrest.

## Findings of Fact and Conclusions of Law

The trial court denied Bell's motion to suppress and made written factual findings and legal conclusions. The trial court concluded that Schram's and Bell's initial interaction was an encounter, not a detention; that after Schram encountered Bell, saw Bell's condition, and heard Bell admit that he had been drinking and driving, Schram had reasonable suspicion to detain Bell for driving while intoxicated; and that after Bell performed the field-sobriety tests, Schram had probable cause to arrest Bell for driving while intoxicated. The trial court also concluded that Schram had the authority to arrest Bell without a warrant.

## Bell's Arguments

Bell contends that the police detained him from the moment the officers arrived because their red-and-blue lights were on and because Schram testified at the suppression hearing that if Bell had tried to leave, he could have been charged with evading detention or arrest. Bell also argues that Schram admitted not seeing an offense committed and that without exigent circumstances—which Schram admitted

5

did not exist—article 14.03(a)(1) of the criminal procedure code did not authorize Schram to arrest him. *See* Tex. Code Crim. Proc. Ann. art. 14.03(a)(1).

## Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer almost totally to a trial court's rulings on questions of historical fact and to a trial court's applying the law to the facts when the facts turn on evaluating credibility and demeanor; but when credibility and demeanor play no factual role, we review the trial court's rulings de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

At a suppression hearing, the trial court alone judges the witnesses' credibility and the weight to be given their testimony. *State v. Rudd*, 255 S.W.3d 293, 297 (Tex. App.—Waco 2008, pet. ref'd) (citing *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007)). Thus, the court may choose to believe all or only portions of a witness's testimony, disbelieving other portions. *Id.* (citing *Garza v. State*, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007)). We do not disturb fact findings that the record supports *Id.* And we view the evidence in the light most favorable to the court's ruling. *Id.* at 297–98 (citing *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). When, as here, the trial court makes factual findings, we must determine whether the evidence supports them. *Id.* at 298. We then review the trial court's legal rulings de novo unless

6

the court's findings are also dispositive of the legal ruling. *Id.* Even if the trial court gave the wrong reason for its ruling, we must uphold the ruling if it is both supported by the record and correct under any applicable legal theory. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

## Discussion

Interactions between police officers and citizens fall into three possible categories:

- encounters,

- investigative detentions, and

- arrests.

*State v. Priddy*, 321 S.W.3d 82, 86 (Tex. App.—Fort Worth 2010, pet. ref'd) (citing *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002); *State v. Bryant*, 161 S.W.3d 758, 761 (Tex. App.—Fort Worth 2005, no pet.)).

An officer's questioning witnesses while investigating an accident is generally a consensual encounter. *Rudd*, 255 S.W.3d at 298 (citing *State v. Stevenson*, 958 S.W.2d 824, 829 (Tex. Crim. App. 1997); *Stoutner v. State*, 36 S.W.3d 716, 719–20 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); *Harper v. State*, 217 S.W.3d 672, 675 (Tex. App.—Amarillo 2007, no pet)). The answers to the officer's questions and the officer's other observations may then provide reasonable suspicion to believe that a driving-while-intoxicated offense has occurred. *Id.* (citing *Stevenson*, 958 S.W.2d at 829; *Stoutner*, 36

7

S.W.3d at 719–20). If so, then the encounter "escalates to an investigatory detention during which the officer conducts field sobriety tests." *Id.* (citing *Arthur v. State*, 216 S.W.3d 50, 55 (Tex. App.—Fort Worth 2007, no pet.); *Reynolds v. State*, 163 S.W.3d 808, 810–11 (Tex. App.—Amarillo 2005), *aff'd*, 204 S.W.3d 386 (Tex. Crim. App. 2006); *Stoutner*, 36 S.W.3d at 719–20). The sobriety-testing results may then lead to probable cause to arrest. *Id.* (citing *Rodriguez v. State*, 191 S.W.3d 428, 444–45 (Tex. App.—Corpus Christi–Edinburg 2006, pet. ref'd)).

## A. Schram and Bell initially engaged in an encounter.

### 1. Applicable Law

An encounter is a consensual interaction that a person may terminate at any time, unlike an investigative detention or an arrest, either of which is a seizure for Fourth Amendment purposes. *Priddy*, 321 S.W.3d at 86 (citing *Gurrola v. State*, 877 S.W.2d 300, 302–03 (Tex. Crim. App. 1994); *Bryant*, 161 S.W.3d at 761). As long as the person remains free to ignore the officer's questions and walk away, the encounter is a consensual one that merits no further constitutional analysis. *Id.* (citing *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995); *State v. Woodard*, 314 S.W.3d 86, 93 (Tex. App.—Fort Worth 2010), *aff'd*, 341 S.W.3d 404 (Tex. Crim. App. 2011)).

Without probable cause or reasonable suspicion, law-enforcement officers may approach individuals to ask questions or even to request a search. *Id.* at 87 (citing *Florida v. Royer*, 460 U.S. 491, 497–98, 103 S. Ct. 1319, 1324 (1983) (plurality opinion); *State v. Velasquez*, 994 S.W.2d 676, 678 (Tex. Crim. App. 1999); *Woodard*, 314 S.W.3d

at 93). Such encounters require no justification. *Id.* (citing *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S. Ct. 1870, 1876 (1980) (plurality opinion); *State v. Larue*, 28 S.W.3d 549, 553 (Tex. Crim. App. 2000); *Woodard*, 314 S.W.3d at 93). Police officers are as free as anyone else to approach someone on the street and ask for information. *Id.* (citing *State v. Garcia–Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008); *Woodard*, 314 S.W.3d at 93). Such interactions may inconvenience or embarrass, but they do not involve official coercion. *Id.* (citing *Garcia–Cantu*, 253 S.W.3d at 243; *Woodard*, 314 S.W.3d at 93). In contrast, a Fourth Amendment seizure occurs only when the officer's authority cannot be ignored, avoided, or ended. *Id.* (citing *Garcia–Cantu*, 253 S.W.3d at 243; *Woodard*, 314 S.W.3d at 93).

Whether a police–citizen interaction is a consensual encounter depends on the totality of the circumstances and on whether a reasonable person would feel free to decline the officer's requests or otherwise end the encounter. *Id.* (citing *Woodard*, 314 S.W.3d at 93; *St. George v. State*, 197 S.W.3d 806, 819 (Tex. App.—Fort Worth 2006), *aff'd*, 237 S.W.3d 720 (Tex. Crim. App. 2007); *State v. Murphy*, No. 02-06-00267-CR, 2007 WL 2405120, at *2 (Tex. App.—Fort Worth Aug. 23, 2007, no pet.) (mem. op., not designated for publication)).

Circumstances indicating that a police–citizen interaction is a seizure rather than a consensual encounter include

- the threatening presence of several officers,
- the officer's displaying a weapon,

- the officer's physically touching the citizen,

- the officer's words or tone of voice indicating that the officer might compel compliance with the officer's requests,

- flashing lights, or

- blocking a suspect's vehicle.

*Id.* (citing *Mendenhall*, 446 U.S. at 554, 100 S. Ct. at 1877; *Woodard*, 314 S.W.3d at 94). But without this type of evidence, otherwise inoffensive conduct between the public and a police officer cannot, as a matter of law, amount to a seizure of that person. *Id.* (citing *Mendenhall*, 446 U.S. at 555, 100 S. Ct. at 1877; *Woodard*, 314 S.W.3d at 94).

## 2. Application

Bell emphasizes Schram's statement that if Bell had run, Schram could have arrested him for evading detention or arrest. Bell's argument presupposes that for Schram's statement to have been true, Schram must necessarily have detained Bell first.

We disagree. Leaving the scene of a vehicular accident is potentially an offense. *See* Tex. Transp. Code Ann. § 550.021. And flight is an action from which Schram (or any other officer) could infer guilt. *See Devoe v. State*, 354 S.W.3d 457, 470 (Tex. Crim. App. 2011). By making this statement at the suppression hearing, Schram was not conceding that he had already detained Bell.

Viewing the evidence in its totality in the light most favorable to the trial court's findings, Schram pulled in behind Bell's vehicle—which was still in the left

10

lane of traffic—to shield it from oncoming traffic, and Schram put on his patrol car's rear red-and-blue lights to alert oncoming traffic of both his and Bell's presence in the left lane. A reasonable person would have perceived Schram's actions as safety precautions and not as attempts to communicate to Bell that Schram wanted to detain him. *See Franks v. State*, 241 S.W.3d 135, 142 (Tex. App.—Austin 2007, pet. ref'd) (holding that when an officer turned on his patrol car's overhead lights and pulled up behind a parked car, the officer's initial interaction with the parked car's occupant was an encounter because the patrol car did not prevent the parked car from leaving by simply pulling forward and because the officer used the overhead lights to illuminate an otherwise dark area); *see also Hudson v. State*, 247 S.W.3d 780, 785 (Tex. App.—Amarillo 2008, no pet.) (holding that initial interaction was a detention when the officer testified that turning on his patrol-car lights communicated that he wanted a person to stop and because no other explanation factually justified the officer's turning on his patrol-car lights); *State v. Carter*, No. 02-04-00063-CR, 2005 WL 2699219, at *2 (Tex. App.—Fort Worth Oct. 20, 2005, pet. ref'd) (mem. op., not designated for publication) (holding that the officer's activating his patrol car's overhead lights after the defendant started to drive away made the interaction a detention). And a reasonable person would have similarly perceived Schram's efforts to find out who Bell was, whether Bell was the driver or an occupant of the car, and whether Bell needed medical attention as parts of a consensual encounter. We hold that both the facts and the law support the trial court's conclusion that Schram and

11

Bell's initial interaction was a consensual encounter. *See Priddy*, 321 S.W.3d at 86–87; *Rudd*, 255 S.W.3d at 297–98.

We overrule Bell's first issue.

## B. After Bell admitted drinking and driving and after Schram saw Bell's physical condition, Schram had reasonable suspicion to detain Bell.

### 1. Applicable Law

A detention, as distinguished from an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he reasonably suspects that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards the detaining officer's subjective intent and looks solely to whether the officer has an objective basis for the stop. *Id.*

### 2. Application

Bell told Schram that he was his car's only occupant and its driver, that he was coming from a bar, and that he had been drinking. In addition to what Bell told him,

12

Schram saw that Bell had watery eyes and slurred his speech. Finally, Bell swayed, walked unsteadily, and smelled of alcohol. We hold that the facts and the law support the trial court's conclusion that Schram had a reasonable suspicion that Bell had been driving while intoxicated. *See Rudd*, 255 S.W.3d at 297–98.

We overrule Bell's second issue.

**C. After Bell failed the field-sobriety tests, Schram had probable cause to arrest him for public intoxication.**

**1. Applicable Law**

Under the Fourth Amendment, a warrantless arrest is unreasonable per se unless it fits into one of a "few specifically established and well[-]delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135 (1993); *Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005). A police officer may arrest an individual without a warrant only if probable cause exists and if the arrest falls within one of the exceptions set out in the code of criminal procedure. *Torres*, 182 S.W.3d at 901; *see* Tex. Code Crim. Proc. Ann. arts. 14.01–.06.

To have probable cause for a warrantless arrest, an officer must reasonably believe—based on facts and circumstances within the officer's personal knowledge or of which the officer has reasonably trustworthy information—that a person has committed an offense. *Torres*, 182 S.W.3d at 901–02. The officer must base probable cause on specific, articulable facts rather than the officer's mere opinion. *Id.* at 902. We use the "totality of the circumstances" test to determine whether probable cause existed for a warrantless arrest. *Id.*

13

Schram did not see Bell driving while intoxicated, so Schram could not arrest Bell for that offense under article 14.01(b) of the criminal-procedure code, which requires that the officer personally witness the offense or that the offender commit the offense in the officer's presence. Tex. Code Crim. Proc. Ann. art. 14.01(b).[1] Even though Schram had not seen the driving-while-intoxicated offense and was not present when it occurred, he potentially could have arrested Bell without a warrant under article 14.03(a)(1) if exigent circumstances existed. *See id.* art. 14.03(a)(1)[2]; *Swain v. State*, 181 S.W.3d 359, 366 (Tex. Crim. App. 2005) (requiring exigent circumstances).

### 2. Background

#### a. The trial court cites article 14.03(a)(1).

The trial court concluded that Schram had properly arrested Bell without a warrant for driving while intoxicated under article 14.03(a)(1), despite Schram's

---

[1]Article 14.01(b) provides, "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." Tex. Code Crim. Proc. Ann. art. 14.01(b).

[2]Article 14.03(a)(1) provides,

(a) Any peace officer may arrest, without warrant:

(1) persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony, violation of Title 9, Chapter 42, Penal Code, breach of the peace, or offense under Section 49.02, Penal Code, or threaten, or are about to commit some offense against the laws . . . .

*Id.* art. 14.03(a)(1).

testimony that he did not have the required exigent circumstances when arresting Bell. *See Swain*, 181 S.W.3d at 366. On appeal, Bell leverages this testimony to argue that his arrest was improper under article 14.03(a)(1).

### b. We abate the appeal for additional findings and conclusions.

Because the trial court's findings of facts and conclusions of law did not address exigent circumstances, we abated the appeal for the trial court to make additional findings and conclusions. *See Bell v. State*, No. 02-17-00299-CR, 2019 WL 3024481, at *3–4 (Tex. App.—Fort Worth July 11, 2019, order) (mem. op., not designated for publication).

### c. The trial court files supplemental findings and conclusions.

We now have the trial court's supplemental findings and conclusions. In its supplement, the trial court found that Schram arrested Bell after Bell failed the standard field-sobriety tests, that Schram "repeatedly testified he had public safety concerns during the incident," and that "those [public safety] concerns existed." Regarding exigent circumstances, the trial court found that Schram had misunderstood the word "exigent," and the trial court concluded that exigent circumstances nevertheless existed when Officer Schram arrested Bell.

The trial court made one other legal conclusion of note: "Under the factual findings set forth in this Court's original and supplemental findings of fact, Defendant Travis Bell committed the offense of public intoxication in front of the Fort Worth Police Department arresting officer."

15

### 3. Application

If the arrest was proper on a basis other than article 14.03(a)(1), we need not address the exigent-circumstances question. For example, if Schram saw Bell commit another offense—such as public intoxication—exigent circumstances would not have been necessary. *See* Tex. Code Crim. Proc. Ann. art. 14.01(b). But because Schram testified that he had arrested Bell for driving while intoxicated, can we rely on article 14.01(b) and public intoxication to determine whether the arrest was proper? We conclude that we can.

"Public intoxication" applies to a person who appears in a public place while intoxicated to the degree that the person may endanger himself or another. *See* Tex. Penal Code Ann. § 49.02(a). Whenever an intoxicated person is in an officer's presence and there is probable cause to make a public-intoxication arrest, the officer may do so without a warrant, even though a warrantless arrest of that person for the offense of driving while intoxicated might be unlawful. *Jones v. State*, 949 S.W.2d 509, 515 (Tex. App.—Fort Worth 1997, no pet.) (citing *Reynolds v. State*, 902 S.W.2d 558, 559–60 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd)); *Collins v. State*, 795 S.W.2d 777, 779 n.4 (Tex. App.—Austin 1990, no pet.).

When sufficient evidence supports a probable-cause finding to arrest someone for the offense of public intoxication committed in the officer's presence, the arrest is not invalid merely because the officer labels the offense "driving while intoxicated." *Jones*, 949 S.W.2d at 515–16. When the crime for which a person is arrested (such as

driving while intoxicated) is closely related to a crime that there was probable cause to believe the person had committed (such as public intoxication in and around a motor vehicle), the arrest is valid provided there is no proof of sham or fraud. *Id.* at 516 (citing *Warrick v. State*, 634 S.W.2d 707, 709 (Tex. Crim. App. [Panel Op.] 1982); *Fletcher v. State*, 298 S.W.2d 581, 582 (Tex. Crim. App. 1957); *Reynolds*, 902 S.W.2d at 560).

An officer's subjective conclusions about whether the defendant's intoxication presented a danger to himself or others are not determinative. *Id.* (citing *Collins*, 795 S.W.2d at 779 n.4). We must independently and objectively review the record's facts about the defendant's intoxication at the time the officer arrested him. *Id.* The test for whether probable cause existed for a public-intoxication arrest is whether the officer's knowledge at the time of the arrest would warrant a prudent person's belief that an intoxicated suspect was a danger to himself or others. *Id.*

The facts before us show that Bell had admitted drinking and driving, had already been in a car accident involving another vehicle that resulted in a Medstar response to check the other vehicle's occupants for injuries, and had failed sobriety tests. Under these circumstances, Bell's driving home was not an option, and walking home—even assuming he lived nearby—was potentially dangerous: it was the middle of the night, and Bell swayed and walked unsteadily. *See Balli v. State*, 530 S.W.2d 123, 126 (Tex. Crim. App. 1975) ("The evidence reflects that appellant in a state of intoxication was walking in the middle of a public street in the city of Plainview after

dark, although at the moment the street was vacant. This evidence was sufficient to show [public intoxication].") *overruled on other grounds by Chudleigh v. State*, 540 S.W.2d 314, 319 (Tex. Crim. App. 1976). "Inasmuch as an essential element of the offense is that appellant *may* endanger himself or others, a potential danger, which need not be immediate nor apparent to the arresting officer, . . . is sufficient to show the element." *Peddicord v. State*, 942 S.W.2d 100, 109–10 (Tex. App.—Amarillo 1997, no pet.) (citing *Dickey v. State*, 552 S.W.2d 467, 468 (Tex. Crim. App. 1977)). Viewing the evidence in the light most favorable to the trial court's ruling, we hold that Bell—in his intoxicated state—was a danger to himself and others and thus that the warrantless arrest was valid. *See id.* at 515–16; *Kelley v. State*, No. 02-06-00339-CR, 2008 WL 110517, at *2–3 (Tex. App.—Fort Worth June 11, 2008, pet. ref'd) (mem. op., not designated for publication); *Cervas v. State*, No. 02-04-00463-CR, 2005 WL 794384, at *2 (Tex. App.—Fort Worth Apr. 7, 2005, no pet.) (mem. op., not designated for publication); *Reynolds*, 902 S.W.2d at 559–60; *see also Stevens*, 235 S.W.3d at 740; *Armendariz*, 123 S.W.3d at 404.

We overrule Bell's third issue.

## Conclusion

Having overruled Bell's three issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

18

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 26, 2019